DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant Nolan E. Douglas appeals from the judgment of the Barberton Municipal Court finding Douglas guilty of operating a motor vehicle while under the influence of alcohol. We affirm.
In the early hours of January 10, 1997, Summit County Deputy Sheriff Provie Tomei was patrolling South Main Street in the City of Green. As he was headed south on South Main Street, Deputy Tomei observed a vehicle "straddling" the roadway and an entranceway to a gas station. Thinking that the vehicle might be disabled, Deputy Tomei pulled his marked vehicle behind it. At this point, Deputy Tomei observed that the car was still running. Deputy Tomei got out of his vehicle, approached the car, knocked on the window and asked the person sitting in the driver's seat to roll down the window. Deputy Tomei identified Douglas as the person sitting in the driver's seat. Deputy Tomei asked to see Douglas' driver's license. Deputy Tomei testified at the hearing on Douglas' motion to suppress that identifying the driver of a vehicle, whether it was disabled or not, was standard procedure. As Douglas attempted to get his driver's license, he dropped his wallet and "kind of fumbled" with it. Deputy Tomei testified that he smelled a "strong odor of alcohol" on Douglas when Douglas rolled down the window and that Douglas' eyes were "watery." Deputy Tomei asked Douglas to step out of the vehicle in order to perform some "field sobriety tests." After administering the field sobriety tests, Deputy Tomei arrested Douglas and cited him for failure to wear a seat belt, in violation of R.C.4513.263(B)(1) and for operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1).
Douglas moved the trial court to suppress all evidence retrieved as a result of the alleged "unlawful investigatory stop" of Douglas. In addition, Douglas alleged that Deputy Tomei lacked probable cause to arrest him for driving under the influence without a warrant. The trial court denied Douglas' motion to suppress. Douglas was tried before a jury and was found guilty of operating a motor vehicle while under the influence of alcohol. Douglas appeals, assigning one error.
Douglas' sole assignment of error states:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.
In addressing this assignment of error, two questions must be answered: 1) was there a "stop" of Douglas' vehicle by Deputy Tomei; and 2) if so, did such stop violate the Fourth andFourteenth Amendments to the United States Constitution or the Ohio Constitution?
 I.
Was there a "stop" or "seizure" of Douglas' vehicle within the meaning of the Fourth Amendment? The Fourth Amendment to the United States Constitution provides in relevant part:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]
Similarly, Art. I, Section 14 of the Ohio Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated[.]
When a police officer stops a motor vehicle and detains its occupants, such stop is a seizure within the meaning of the Fourth
and Fourteenth Amendments to the United States Constitution.Delaware v. Prouse (1979), 440 U.S. 648, 653, 59 L.Ed.2d 660,667. However, in the present case, Douglas' vehicle was already stopped. This court dealt with a similar situation in Stow v.Lauro (April 6, 1994), Summit App. Nos. 16337 and 16342, unreported. In Lauro, a police officer observed the defendant's automobile pull into the parking lot of an apartment building at 12:30 a.m. There had been some trouble with vandalism and car theft at the apartment complex. Although the automobile was fifty feet from the officer's car with the windows closed, the officer could hear the stereo in the car and therefore thought he should "pay a little more attention to it." Id. at 2. The defendant moved the car closer to the officer's vehicle, exited the car and walked away, staggering. The officer asked the defendant if he could help him. The defendant appeared confused, had a strong odor of alcohol on him, was slurring his words and had bloodshot and watery eyes. The officer asked the defendant if he'd been drinking. When the defendant replied that he had, the officer administered field sobriety tests. We affirmed the trial court's denial of the defendant's motion to suppress evidence, stating that there was no "stop" until after the officer observed the defendant's behavior and condition and asked him to submit to field sobriety tests, at which point the officer "clearly had reasonable suspicion based upon articulable facts, that [the defendant] was intoxicated." Id. at 5. After the defendant failed the field sobriety tests, the officer had probable cause to make an arrest. Id.
The facts in this case are substantially similar. Deputy Tomei, a police officer with at least seven years of experience, testified at the suppression hearing that he observed Douglas' automobile parked at an odd angle, halfway on the road and halfway in the driveway of a gas station at approximately 2:20 in the morning. He saw Douglas at the wheel of the car, and knocked on the window, intending to ask if there was anything wrong and to ask Douglas for his driver's license in order to identify him. When Douglas rolled down the window, Deputy Tomei smelled a strong odor of alcohol and noticed that Douglas' eyes were "watery." When Deputy Tomei asked to see Douglas' license, Douglas dropped his wallet and fumbled about before he was able to retrieve it to show Deputy Tomei.
Until the point when Douglas rolled down his window at the request of the Deputy Tomei, no "stop" or "seizure" had occurred, and therefore no "level of suspicion" was required when Deputy Tomei approached Douglas' vehicle. However, there is evidence in the record to support "reasonable suspicion" based on articulable facts, to justify Deputy Tomei's initial approach of Douglas' vehicle, as we will discuss below.
In addition, "law enforcement officers may legitimately stop cars for purposes other than criminal investigation." State v.Thayer (Aug. 31, 1990), Clark App. No. 2667, unreported.
 Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.
Id., citing Cady v. Dombrowski (1973), 413 U.S. 433, 441,37 L.Ed.2d 706, 714-715. Deputy Tomei testified that he initially thought he was dealing with a disabled vehicle. Thus, Deputy Tomei's approach of Douglas' vehicle, either to offer assistance or to further investigate the possibility of a crime, was legitimate.
 II.
Once Deputy Tomei began questioning Douglas and asked him to submit to the field sobriety tests, there clearly was a "stop" or "seizure." The next issue we must address is whether Deputy Tomei's "seizure" of Douglas at this point was reasonable? "In the case of an investigative stop, the proper standard is not probable cause, but rather that there existed in the officer's mind a reasonable suspicion based on articulable facts that a violation of law had occurred or was occurring." State v. Lowman
(1992), 82 Ohio App.3d 831, 837. Therefore, in order for the seizure to be constitutional, the police officer must have specific and articulable facts that give rise to reasonable suspicion that criminal activity is taking place. Prouse, supra, at 663, 59 L.Ed.2d at 673.
The question of whether an officer has a reasonable suspicion to make an investigatory stop is to be reviewed by an appellate court de novo. Ornelas v. United States, 517 U.S. 690, ___,134 L.Ed.2d 911, 916; State v. Gutierrez (July 17, 1996), Medina App. No. 2515-M, unreported, at 6. Courts are required to exclude evidence obtained by means of seizures and searches found violative of the Fourth Amendment. See Mapp v. Ohio (1961),367 U.S. 643, 657, 6 L.Ed.2d 1081, 1091; State v. Halczyszak (1986),25 Ohio St.3d 301, 302, certiorari denied (1987), 480 U.S. 919,94 L.Ed.2d 691.
A police officer's determination of "reasonable suspicion" is measured by an objective standard: "`[W]ould the facts available to the officer at the moment of seizure or the search "warrant a [police officer] of reasonable caution in the belief" that the action taken was appropriate?'" State v. Bobo (1988), 37 Ohio St.3d 177,178-179, certiorari denied (1988), 488 U.S. 910,102 L.Ed.2d 252, quoting Terry v. Ohio (1968), 392 U.S. 1, 22,20 L.Ed.2d 889, 906. Some of the factors that may be considered when determining whether there was "reasonable suspicion" of criminal activity on the part of the investigating officer are: whether it was a high crime area; whether there has been recent criminal activity; the time of day; and the number of occupants in the car. State v. Freeman (1980), 64 Ohio St.2d 291, 295, certiorari denied (1981), 454 U.S. 822, 70 L.Ed.2d 94. This list is not exhaustive, nor is it required that any specific factor be present. All facts must be considered. Id. The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. Bobo, supra, at 178. For example, "reasonable suspicion" has been found where a man was asleep in his vehicle in the parking lot of a bank at 4:30 in the afternoon.Bucyrus v. Lewis (1990), 66 Ohio App.3d 256, 258-259. We find that Deputy Tomei had articulable facts, which, when viewed in their totality, were sufficient to make him reasonably suspicious of criminal activity. Douglas' car was parked in an odd manner, partially in the driveway of a closed gas station, at approximately 2:20 a.m. Deputy Tomei's subjective belief that the car was disabled warranted further investigation into the situation. See State v. Thayer (Aug. 31, 1990), Clark App. No. 2667, unreported. In addition, a reasonable police officer in Deputy Tomei's position could have objectively had reasonable suspicion that criminal activity was taking place. All facts considered, we hold that Deputy Tomei was performing his police duties in a conscientious manner. See Freeman, supra, at 295. "A brief stop of a suspicious individual in order to determine his identity or maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time." Id. at 296. It would have been unreasonable for Deputy Tomei, upon perceiving Douglas' possible impairment, to permit Douglas to drive away without investigating his impairment. See State v. Eller (Nov. 5, 1997), Summit App. No. 18495, unreported, at 6.
Once Deputy Tomei observed Douglas' physical condition and behavior and smelled alcohol, he had reasonable suspicion to conduct the field sobriety tests, the results of which gave him probable cause to arrest Douglas. The trial court did not err in denying Douglas' motion to suppress. Douglas' assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Barberton Municipal Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
SLABY, P.J.
DICKINSON, J. CONCUR.