THE STATE OF OHIO, APPELLEE, *v.* FREEMAN, APPELLANT.

(No. 80-701—Decided December 30, 1980.)

292

*Mr. Anthony G. Pizza,* prosecuting attorney, and *Mr. David O. Bauer,* for appellee.

*Mr. John F. Potts,* for appellant.

LOCHER, J. Appellant, in his first proposition of law, asserts, in essence, that, in light of the facts of this cause, the officer did not have specific and articulable facts which would reasonably lead him to believe that appellant was involved in specific criminal activity. Stated otherwise, appellant claims that the seizure of the gun was unlawful, since it is the "fruit of the poisonous tree" of an illegal stop.

We find no merit in this contention.

It is elementary and undisputed herein that, if the initial stop of the appellant was valid and proper, the seizure of the gun was also proper, since it was in plain view of the officer.

See *Harris* v. *United States* (1968), 390 U. S. 234; *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443.

It is important to note that the concern herein involves an investigative stop and not a question of probable cause incident to an arrest. All facts and consequences after the initial stop are undisputed. The record discloses that appellant, after being asked by the officer for identification, submitted, without objection, the driver's license of Ben Williams, which had an outstanding traffic warrrant, thereby mandating a further detainment.

Thus, the pivotal issue is limited to the incident leading up to the initial investigative stop.

In *United States* v. *Constantine* (C.A. 4, 1977), 567 F. 2d 266, the court commented upon the permissibility of an investigative stop. The court aptly noted, at page 267:

"In *Terry* v. *Ohio*, 392 U. S. 1, 21 * * *(1968), the Court found that the governmental concern in curtailing crime would permit a police officer in appropriate circumstances to 'approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Id.*, at 22 * * *. The Court in *United States* v. *Brignoni-Ponce*, 442 U. S. 873 * * *(1975), held that probable cause was not required for a brief investigative stop * * *."

Analysis of the investigative stop herein initiates a discussion of *Terry* v. *Ohio*, *supra*. The United States Supreme Court, in *Terry*, at pages 21-22, stated:

"* * *And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * *[W]ould the facts available to the officer at the moment of the seizure of the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. *Carroll* v. *United States*, 267 U. S. 132 (1925); *Beck* v. *Ohio*, 379 U. S. 89, 96-97 (1964).* * *" (Footnotes omitted.)

Other courts have given guidance in the application of facts that are considered "specific and articulable," so as to be within the permissible confines for a stop as enunciated in *Terry*, *supra*.

In *United States* v. *Constantine, supra* (567 F. 2d 266), the court, at page 267, stated:

"Assessing the need for a brief stop, 'the circumstances***before [the officer] are not to be dissected and viewed singly; rather they must be considered as a whole.' *United States* v. *Hall,* 174 U. S. App. D. C. 13, 15, 525 F. 2d 857, 859 (1976).***An area's disposition toward criminal activity is an articulable fact. *United States* v. *Brignoni-Ponce,* 422 U. S. at 884-885***. The mood of the precinct and the circumambient activities***'are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' *United States* v. *Hall,* 174 U. S. App. D. C. at 15, 525 F. 2d at 859. See *United States* v. *Magda,* 547 F. 2d 756, 758 (2 Cir. 1976)."

We hold that the facts as presented herein did give the officer the right to minimally intrude upon the appellant. The specific and articulable facts supporting our conclusion are, to wit: (1) the location of the investigation being a high crime area; (2) the officer being quite aware of recent criminal activity in the motel parking lot in which appellant was parked; (3) the time of night being 3:00 a.m.; and (4) the appellant sitting alone in the car at the rear of the building for approximately 20 minutes with the engine turned off.

All facts considered, we hold that the officer was only performing his police duties in a conscientious manner. It is contra to the very nature of the duty of an officer to patrol in a high crime area and to be oblivious to such aforementioned facts. This line of reasoning was advanced by the United States Supreme Court, in *Adams* v. *Williams* (1972), 407 U. S. 143, when, at pages 145-146, it stated:

"In *Terry* this Court recognized that a 'police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Id.,* at 22. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence

296

of good police work to adopt an intermediate response. See *id.,* at 23. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time. *Id.,* at 21-22; see *Gaines* v. *Craven,* 448 F. 2d 1236 (CA9 1971); *United States* v. *Unverzagt,* 424 F. 2d 396 (CA8 1970)."

In complete compliance with the above-quoted passage, the officer herein made a brief stop of the appellant in order to investigate and to "maintain the status quo momentarily while obtaining more information," to wit: some identification.

Other jurisdictions, when presented with similar arguments, are in accord with our determination. In *People* v. *Damaska* (1978), 404 Mich. 391, 273 N. W. 2d 58, the Supreme Court of Michigan determined that police officers were justified in making an investigative stop of a vehicle, in view of, *inter alia,* the fact that the defendant emerged from a business parking lot late at night with his car lights extinguished and that the office building had been subject to recent burglaries. See *United States* v. *Constantine, supra,* and *Commonwealth* v. *Almeida* (1977), 373 Mass. 266, 366 N. E. 2d 756.

For the foregoing reasons, appellant's first proposition of law is overruled.

In his second proposition of law, appellant asserts that "[a] search warrant is required for the search of luggage that is not within the immediate possession and control of a person [appellant] who has been placed under arrest."

In accordance with the relevant facts of this cause, we find that appellant had abandoned his luggage, and thus we determine that his second proposition of law is without merit.

It is undisputed that the question herein is *not* complicated by the possibility that the acts taken to establish the abandonment may have been brought about by unlawful police conduct. Rather, the arrest was made upon a valid warrant issued for appellant.

It is rudimentary that one does not have standing to object to a search and seizure of property that he has voluntarily abandoned. *Abel* v. *United States* (1960), 362 U. S. 217 (search of hotel room by FBI agents without a warrant after defend-

ant had relinquished his room and seizure of abandoned articles held permissible); *Parman* v. *United States* (C.A. D.C. 1968), 399 F. 2d 559 (evidence obtained from abandoned apartment even without search warrant held admissible); *United States* v. *Edwards* (C.A. 5, 1971), 441 F. 2d 749 (search of car trunk proper when defendant abandoned auto and fled on foot after a high speed chase with police); *United States* v. *Moore* (C.A. D.C. 1972), 459 F. 2d 1360 (warrantless search of auto permissible when auto involved in a robbery was abandoned after the vehicle went out of control); *United States* v. *Colbert* (C. A. 5, 1973), 474 F. 2d 174 (defendants who disclaimed interest in briefcases had no standing to object to the search of abandoned briefcases); and *Commonwealth* v. *Shoatz* (1976), 469 Pa. 545, 366 A. 2d 1216 (the search of suitcases held permissible on abandonment theory when defendants dropped suitcases and fled on foot when approached by police).

The issue is, therefore, factual as to whether the appellant's action herein constitutes abandonment of the suitcases.

The court, in *United States* v. *Colbert, supra,* at page 176, gives some guidance to our determination, as follows:

"Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States* v. *Cowan,* 2d Cir. 1968, 396 F. 2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States* v. *Manning,* 5th Cir. 1971, 440 F. 2d 1105, 1111. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. See *Abel* v. *United States, supra; Edwards* v. *United States,* 5th Cir. 1971, 441 F. 2d 749; *Lurie* v. *Oberhauser,* 9th Cir. 1970, 431 F. 2d 330. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *United States* v. *Edwards, supra,* 441 F. 2d at 753; *cf. Katz* v. *United States,* 1967, 389 U. S. 347\*\*\*."

The pertinent facts in the instant cause reveal that appellant tried to deceive the arresting officer into believing that

he would cooperate, following which appellant suddenly dropped his luggage, exited through the swinging doors and fled on foot from the scene of the arrest. As far as appellant was concerned the luggage was *bona vacantia,* and, therefore, its search was proper. The legal effect of the abandonment, as noted above, is to deprive the appellant of standing to challenge the subsequent search.

Appellant's propositions of law being without merit, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

MCBRIDE, SWEENEY, HOLMES and DOWD, JJ., concur.

W. BROWN, J., concurs in paragraph one of the syllabus and in the opinion.

CELEBREZZE, C. J., dissents.

MCBRIDE, J., of the Second Appellate District, sitting for P. BROWN, J.

WILLIAM B. BROWN, J., concurring. I concur in the majority opinion and in paragraph one of the syllabus. I believe paragraph two of the syllabus should more clearly articulate that an individual forfeits his standing under the Fourth Amendment to object to a search and seizure of his property only if he has abandoned said property *at the time of the search.* See *United States* v. *Edwards* (C.A. 5, 1971), 441 F. 2d 749; *Katz* v. *United States* (1967), 389 U. S. 347.

CELEBREZZE, C. J., dissenting. I would reverse the judgment of the Court of Appeals. In my judgment, the initial stop of appellant was not based on any articulable suspicion of criminal conduct, the test mandated by controlling precedent of the United States Supreme Court.

At the outset, I am troubled by the implication in the majority opinion that appellant's constitutional claim is somewhat less than noteworthy simply because the arresting officer's initial stop "minimally intrude[d] upon the appellant." It is precisely unchecked "minimal" intrusions of this nature which inevitably lead to maximum disregard of fundamental constitutional protections.

It is a basic tenet of American constitutional law that a police stop of a motor vehicle, however brief, constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution. *Delaware* v. *Prouse* (1979), 440 U. S. 648, 653; *United States* v. *Martinez-Fuerte* (1976), 428 U. S. 543, 556-558; *United States* v. *Brignoni-Ponce* (1975), 422 U. S. 873, 876. See, generally, *Brown* v. *Texas* (1979), 443 U. S. 47; *Terry* v. *Ohio* (1968), 392 U. S. 1 (hereinafter *"Terry"*). Moreover, "[i]t must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16.

In both *Terry* (Chief Justice Warren) and *Brown* v. *Texas, supra* (Chief Justice Burger for a unanimous court), the United States Supreme Court has required a police officer, prior to effecting an investigative stop, to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. More specifically "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* at 21.

The flaw in the state's case is that it has failed to demonstrate the requisite specific, articulable facts which would justify a reasonable suspicion that appellant was involved in any criminal conduct. The record illustrates that, on the date of the arrest, the police officer initially observed appellant sitting alone in a car for a short period of time in the parking lot of a motel, which was located in what was evidently considered by the police to be a high crime area. Apparently, due to police information that there had been a recent rash of automobile thefts and damage in the area, the officer became suspicious of this situation and decided to take further action. Accordingly, he entered the motel lobby and interrogated the desk clerk as to whether there had been any trouble or disorder in the motel or parking lot that evening. The desk clerk assured the officer that there had been no trouble or disorder. There is no indication that the police officer observed any "stripped" cars, pried-open car doors or broken windshields in the parking lot at that time. Indeed, to the ex-

tent that it can be discerned from the record, not even one hubcap had been pilfered from the motel parking lot that evening.

Thus, the stop of appellant's car was supported by nothing more substantial than the officer's "inarticulate hunch." *Terry*, at 22. Considering the circumstances as a whole, the police officer had, at best, reason to keep appellant under further surveillance. However, at no point was the officer justified in stopping appellant for the purpose of investigative questioning. As Circuit Judge Leventhal ruled in *United States* v. *Montgomery* (C.A. D.C. 1977), 561 F. 2d 875, 879:

"The inarticulate hunch, the awareness of something unusual, is reason enough for officers to look sharp. Their knowledge and experience identify many incidents in the course of a day that an untrained eye might pass without any suspicion whatever. But awareness of the unusual, and a proper resolve to keep a sharp eye, is not the same as an articulated suspicion of criminal conduct. Defendant's acts, as reported, were too innocuous to warrant the intrusion of a temporary seizure for questioning."

Furthermore, I submit that the facts at bar are fundamentally distinguishable from the facts of *Terry*. In *Terry*, the police officer observed the two defendants proceeding back and forth along an identical route, where they paused to stare in the same store window approximately 24 times. Each pause was invariably followed by a conference between the two on a street corner, at one of which they were joined by a third man, who hastily left. The United States Supreme Court ruled that the officer, based on his on-the-spot observations, legitimately investigated this suspicious conduct by stopping and questioning the defendants. In so ruling, however, the court emphasized that the officer had been a policeman for 39 years, a detective for 35 years and, finally, that he had been assigned to this particular area of downtown Cleveland to patrol for shoplifters and pickpockets for 30 years. *Terry*, at 5.

Clearly, the *Terry* fact pattern differs radically from the case at bar, in which appellant was observed sitting in a car, minding his own business, in a motel parking lot where there were no signs of automobile theft or other criminal activity. I am also compelled to point out that the arresting officer in this

case, unlike Officer McFadden in *Terry,* was a rookie patrolman who had been on the force for approximately six months. Thus, the foregoing factual distinctions between the two cases require different results.

Although I acknowledge that the officer's stop of appellant appears to have been made in good faith, this, by itself, does not justify the investigative questioning. As Chief Justice Burger observed in *Brown* v. *Texas, supra,* at 52:

"The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees."

When reasonable, articulable, objective grounds for suspecting that an individual is involved in criminal activity are present, I would approve an investigative stop by a police officer. However, to allow a stop in a case like the one *sub judice,* where these grounds are absent, would be to sanction stops and seizures of any citizen based on nothing more than the baseless whim, personal predilection and unconstrained discretion of the individual police officer. See *Brown* v. *Texas, supra.* See, generally, *Almeida-Sanchez* v. *United States* (1973), 413 U. S. 266, 270; *Camara* v. *Municipal Court* (1967), 387 U. S. 523, 528.

As the Supreme Court has consistently recognized:

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co.* v. *Botsford* (1891), 141 U. S. 250, 251.

In view of the fact that we live in a free and open society, I would reverse the judgment of the Court of Appeals in order to protect the inestimable right of personal security that we all enjoy.