OPINION
Defendant-appellant Eddie L. McDaniel appeals from his conviction and sentence, following a no-contest plea, for DUI. McDaniel contends that the trial court erred in denying his motion to suppress evidence obtained as the result of an allegedly unlawful stop. We conclude that the trial court properly denied the motion, because the stop, while not for investigative purposes, was nevertheless reasonable under the circumstances. Therefore, the judgment of the trial court is Affirmed.
 I
One afternoon in May, 1998, Xenia police officer Matt Foubert responded to a call on North Richard Drive. Foubert testified as follows:
 Q. When you responded on North Richard Drive, what was the nature of your call that you were dispatched to?
A. I was dispatched on an unwanted call.
 Q. When you were dispatched on an unwanted call, did you have a suspect's name before you arrived on North Richard Drive?
A. Correct.
Q. What was the suspect's name?
 A. It was Eddie McDaniel. He's a friend — I don't know the extent of the friendship — of the resident there.
 Q. Now, did you know any more specifically other than it was an unwanted call that you were responding to? Did you know any further facts?
 A. I know I've been there before on similar incidents. I know that I know Mr. McDaniel. I know that there have been problems at that residence before between him and the adult female resident in that household.
* * * *
 Q. When you responded to North Richard Drive, can you tell me, prior to May 24th, when was the last time, if you can remember, that you responded to a situation on North Richard Drive that involved Mr. McDaniel?
 A. It was within the past year, but I don't know exactly how long.
 Q. Was it more than once or was this the second time, probably, in 1998?
A. I think I've been there three times total.
* * * *
 Q. When you responded there, did you find out what the nature of — why he was unwanted?
 A. The female resident stated that there had been a relationship, that it was over, that they had —
 MR. ORLINS: [representing McDaniel]: Note my objection to what the female resident said. She can be subpoenaed into court to — in fact, I believe the law requires her testimony.
 MS. LEWIS: [representing the City]: For the purposes of the suppression —
THE COURT: Hang on just a minute.
 I'm going to permit the testimony because I'm going to permit it to show why this officer did what he did. When we get to the end of the case, if the Defense feels that her testimony should have been entered or was necessary for another purpose, the Defense can make that argument.
 So go ahead and answer the question, if you remember what it was.
 THE WITNESS: There had been a relationship. There was an argument. She did not want him back into the household. She said there were several problems, one of which was his alcohol intake, and she asked that if and when we find him, to advise him not to return to her residence because she did not want him back.
 Q. All right. So later on that evening, did you come in contact with Mr. McDaniel?
 A. It was almost — I mean, it was within the same half hour. I know where Mr. McDaniel lives. I've been to his apartment several times on calls with him in his apartment, also. I know the car he drives just from I used to live at Thistlewood, also. So I would see him. I know his car. I radioed other units if he's at Thistlewood off of Alameda — he drives a white Taurus. He has an apartment right close to the street. If anybody's there, I need to talk to him, just to advise he's not there.
 The resident also advised me that he had been drinking that day heavily, and I had known him prior to be drinking that he may be intoxicated.
Xenia police officer Thomas Robert Norris, Jr., having been advised by the dispatcher of the need to notify McDaniel that he was unwanted at the residence, made the stop. Before making the stop, Norris ran the registration, in order to make sure that the person being stopped was, in fact, McDaniel. Norris received this confirmation before making the stop. At some point, Norris also discovered that McDaniel's license had been suspended. However, we cannot ascertain from this record whether Norris was aware of the license suspension before making the stop. Norris's testimony is at least equally susceptible of an interpretation that he was not aware of the license suspension until after he made the stop.
Norris acknowledged that he did not stop McDaniel for any purpose other than to communicate to him that he was no longer wanted at the unnamed woman's residence. There is nothing in the residence to indicate that Norris had any reason to believe that McDaniel was driving while under the influence of alcohol before making the stop. Although the record is silent on this point, it appears that Norris came to believe, after having made the stop, that McDaniel had been driving under the influence of alcohol, since McDaniel was cited both for driving under the influence of alcohol and for driving under a license suspension.
McDaniel moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop, and simultaneously requested leave to file that motion out of time. The trial court denied his motion for leave to file the motion to suppress out of time, whereupon McDaniel pled no contest to driving under the influence, and was sentenced accordingly. It appears that the driving under suspension charge was dismissed. From his conviction and sentence, McDaniel appealed to this court. In an opinion and judgment May 28, 1999, we reversed McDaniel's conviction and sentence, concluding that the trial court had abused its discretion by denying McDaniel's motion for leave to file his suppression motion out of time. This cause was remanded.
Upon remand, the trial court heard the suppression motion, and overruled it. Thereafter, McDaniel again pled no contest to driving while under the influence of alcohol, and again it appears that the driving under suspension charge was dismissed. The same sentence was imposed that had been imposed previously. From his conviction and sentence McDaniel appeals.
 II
McDaniel's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
In its written entry overruling McDaniel's motion to suppress, the trial court did not indicate its reasons. However, the trial court's reasons were expressed orally at the conclusion of the hearing. The trial court appears to have based its decision upon a conclusion that it was reasonable for Officer Norris to have stopped McDaniel for the purpose of communicating to him that he was no longer welcome at the unnamed woman's residence.
McDaniel contends that the State was required to demonstrate that the police had reasonable suspicion that criminal activity was taking place, citing Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889; and State v. Freeman (1980), 64 Ohio St.2d 291. Although cases involving traffic stops overwhelmingly involve stops made for the purpose of investigating possible criminal activity, that is not the only proper purpose for which a stop may be made. Where a stop is made for other than an investigatory purpose, the considerations involving weighing the public interest in making the stop versus the individual's interest in privacy was the subject of thoughtful discussion inUnited States v. Dunbar (D.Conn, 1979), 470 F. Supp. 704, at 707-708:
 It would be too extravagant to contend that a benign purpose of rendering assistance could never justify the stop of a motorist. The most rigorous view of the Fourth Amendment would not bar police officers from stopping a motorist to inform him that a bridge beyond a bend in the road had just been washed away. Some might contend that, as soon as time permitted, even this situation could be handled less intrusively by placing barricades to close the road, but a stopping of cars to warn and suggest alternate routes scarcely seems unreasonable. Other situations can be imagined where a road remains passable, yet police officers legitimately promote safety by stopping motorists to inform them about road hazards.
 Aiding a motorist believed to be lost advances no substantial safety interest. It is arguable that the lost motorist, if not assisted, might interfere with the peacefulness of a neighborhood at 1:00 a.m. by seeking directions from a householder, but that concern is tenuous. Moreover, the interest in aiding the motorist, for his own benefit or that of the local residents, can in most situations be as well served by having the police officer make his presence known and leaving to the motorist the decision as to whether to stop and seek directions. Thus, while the interest of government in aiding a lost motorist may be considered "legitimate" within the meaning of [Delaware v.] Prouse
[___ U.S. ______, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)], it is an interest entitled to extremely slight weight in the balance mandated by [United States v. Brignoni-Ponce, 42 U.S. 873,[422 U.S. 873] 95 S.Ct. 2574, 45 L.Ed.2d 607
(1975)].
 On the individual's side of the balance, the interest is also not especially weighty. The privacy intrusion is brief and normally uneventful. However, it does entail the risk of creating "substantial anxiety," Delaware v. Prouse, supra,
___ U.S. at ___________, 99 S.Ct. at 1391, and is a selective stopping that is viewed by the Supreme Court as more intrusive than a stopping of all motorists at a given point. See United States v. Martinez-Fuerte, 428 U.S. 543, 558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); United States v. Ortiz, 422 U.S. 891, 894-895, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).
 Judicial scales are not well calibrated to compare the slight governmental and privacy interests on either side of the balance in this case. Two considerations persuade me that the balance ought to be struck on the side of privacy. The policy of the Fourth Amendment is to minimize governmental confrontations with the individual. That policy is not furthered by permitting police officers to stop citizens not even remotely suspected of any conduct in violation of criminal or regulatory standards, simply for the well-intentioned purpose of providing directions. Moreover, however well-intentioned the stopping may have been in this case, the risk of abuse is real. The "plain view" principle has spawned numerous cases where the police officer says, "I saw him drop the package." See Comment, "Police Perjury in Narcotics `Dropsy' Cases: A New Credibility Gap," 60 Geo. L.J. 507 (1971). The investigative stop authority announced in Terry v. Ohio, [supra], has led to cases where the officer says, "He looked suspicious." [citations omitted.] The Fourth Amendment stands against initiating a new line of cases in which the officer says, "I thought he was lost."
In the case before us, unlike in Dunbar, supra, a third person provided the initiative for the stop, thereby making it unlikely that this reason for a stop would be used by the police as a pretext for a stop that is really investigative in its purpose.
In the case before us, the purpose in making the stop was more directly intended to benefit a third person — the unnamed woman with whom McDaniel had a relationship — rather than to benefit McDaniel, himself. However, in view of the past history of a strained relationship, a police officer's having undertaken to be the bearer of a message of personal rejection likely to arouse anger on McDaniel's part may well have served to benefit both parties to the relationship, by diminishing the likelihood of an angry, and potentially violent, confrontation between the two.
The touchstone of analysis involving Fourth Amendment issues, when all else fails, is reasonableness; that is, whether the police officer has acted reasonably in undertaking the action that intruded upon an individual's privacy interests. Although the issue is close, we conclude that Officer Norris acted reasonably in effecting the stop in this case. We reject McDaniel's contention that a traffic stop may only be justified when it is based on some investigative purpose. In addition to the examples of reasonable purposes articulated in United States v. Dunbar,supra, we would add that it would certainly be reasonable for a police officer to stop a motorist for the purpose of informing her that her child is in critical condition, and is about to undergo emergency surgery in a nearby hospital. Admittedly, the issue in the case before us is much closer. However, we are persuaded that it was reasonable for Officer Norris to inflict upon McDaniel the minor, but not negligible, inconvenience of a traffic stop, for the purpose of relaying the message that he was no longer welcome at the residence of the woman with whom he had a relationship.
McDaniel's sole assignment of error is overruled.
 III
McDaniel's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 _________________ FAIN, J.
GRADY, P.J., and BROGAN, J., concur.