OPINION
Appellant James Havens appeals the Licking County Municipal Court's decision that upheld his administrative license suspension. The following facts give rise to this appeal.
On the evening of October 29, 1999, appellant attended a Granville High School football game with family and friends. Following the game, appellant and his family walked to their vehicle and waited for appellant's son, a wide receiver for the Granville High School football team. Thereafter, appellant and his family drove home. After arriving home, appellant's son indicated that he wanted to attend a party. Appellant drove his son to the party and went to the Granville Pizza Shop to wait for his son to call him on the cell phone. While at the pizza shop, appellant purchased at least two alcoholic beverages and visited with two friends. By 12:30 a.m., when appellant still had not heard from his son, appellant assumed that his son intended to stay over night at a friend's house. Appellant finished his drink and left the pizza shop. While on Pearl Street, a Granville Police Officer began following appellant's vehicle. The officer eventually stopped appellant in the parking lot of Granville High School.
Following the stop of appellant's vehicle, the officer asked appellant to perform several field sobriety tests. Appellant declined to take the HGN test, stating that he was exhausted, that the smoke from the bar irritated his eyes and the flashers from the cruiser were shining in his eyes. However, appellant agreed to perform two other tests in addition to touching his index finger to his nose and reciting the alphabet. After completing these tests, the officer again requested appellant to submit to the HGN test. Appellant refused to submit to the test. At that point, the officer informed appellant that his refusal to submit to the HGN test was a failure and placed appellant under arrest for driving under the influence of alcohol.
The officer transported appellant to the Granville Police Station and requested appellant to submit to a breathalyzer test. Appellant declined to take the test. At that point, the officer seized appellant's driver's license and initiated the administrative license suspension procedure. The officer charged appellant with OMVI, driving with an expired driver's license and driving left of center.
Appellant appealed his administrative license suspension to the Licking County Municipal Court. The court conducted a hearing on December 1, 1999. At the hearing, appellant testified that he had two drinks between 10:30 p.m. and 12:30 a.m. Following the presentation of evidence, which included a video tape of the stop, the trial court concluded that the officer had reasonable grounds upon which to believe that appellant was under the influence of alcohol.[1] Appellant timely filed a notice of appeal from the trial court's decision and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED WHEN IT UPHELD AN ADMINISTRATIVE LICENSE SUSPENSION THAT WAS BASED ON AN UNCONSTITUTIONAL TRAFFIC STOP.
 II. THE TRIAL COURT ERRED WHEN IT FAILED TO APPLY THE "PHYSICAL FACTS RULE" WHEN THE EVIDENCE IN THE VIDEO TAPE OF THE TRAFFIC STOP UNAMBIGUOUSLY AND UNEQUIVOCALLY ESTABLISHED THAT DEFENDANT NEVER IMPROPERLY DROVE LEFT OF CENTER.
 III. THE TRIAL COURT ERRED WHEN IT REGARDED THE BMV FORM 2255 AS PRIMA FACIE PROOF THAT THE ARRESTING OFFICER HAD REASONABLE GROUNDS TO BELIEVE THAT DEFENDANT WAS OPERATING HIS VEHICLE UNDER THE INFLUENCE OF ALCOHOL SINCE THE FORM MERELY STATED THAT DEFENDANT HAD DRIVEN LEFT OF CENTER.
 I, II
Appellant contends, in his First Assignment of Error, that the trial court erred when it upheld the administrative license suspension because the officer's stop of his vehicle was unconstitutional. Appellant maintains, in his Second Assignment of Error, that he never drove left of center and therefore, the officer improperly stopped him for this violation. We disagree.
R.C. 4511.191(H)(1)(a) through (d) sets forth four conditions an officer must comply with in order to impose a valid ALS suspension. These conditions are as follows:
 (a) Whether the law enforcement officer had reasonable grounds to believe the arrested person was operating a vehicle upon a highway or public or private property used by the public for vehicular travel or parking within this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine and whether the arrested person was in fact placed under arrest;
 (b) Whether the law enforcement officer requested the arrested person to submit to the chemical test designated pursuant to division (A) of this section;
 (c) Whether the arresting officer informed the arrested person of the consequences of refusing to be tested or of submitting to the test;
(d) Whichever of the following is applicable:
 (i) Whether the arrested person refused to submit to the chemical test requested by the officer;
 (ii) Whether the chemical test results indicate that the arrested person's blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, the person's breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath, or the person's urine contained a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of the person's urine at the time of the alleged offense.
Appellant had the burden of proving, by a preponderance of the evidence, that one of the above conditions had not been met.
At the ALS hearing conducted by the trial court on December 1, 1999, appellant challenged the validity of the stop. Tr. at 17-20. We agree with appellant's argument that a lawful arrest, including a constitutional stop, must take place before a refusal to submit to chemical tests of one's blood, breath, urine or other bodily substances triggers a license suspension. Waterford v.Ohio Bur. of Motor Vehicles (1996), 110 Ohio App.3d 499, 502, citing Williams v. Ohio Bur. of Motor Vehicles (1992), 62 Ohio Misc.2d 741; cf. State v. Taylor (1981), 3 Ohio App.3d 197.
The standard for an investigatory stop of a motor vehicle is less than probable cause and can be founded upon a reasonable and articulable suspicion that an individual is involved in criminal activity. United States v. Cortez (1981), 449 U.S. 411; State v.Freeman (1980), 64 Ohio St.2d 291. In determining whether a stop is proper, a court must view that stop in light of the totality of the surrounding circumstances. Freeman, supra, at paragraph one of the syllabus. Thus, in reviewing the trial court's decision upholding the ALS suspension, we must review the evidence that was before the trial court when it made its decision.
Four witnesses testified at the ALS suspension hearing. Appellant testified; appellant's friends, David and Leda Rutledge; and appellant's law partner, William Willis, Jr. Appellant also submitted several exhibits, the most pertinent to this appeal being a narrative supplement to the Ohio Uniform Incident Report in which the arresting officer stated his reason for the traffic stop. The narrative supplement states as follows:
 On the stated date and time on the report I was heading Eastbound on College St. just passing Prospect St. and saw a red Land Rover turn left onto N. Pearl off of College St. I turned and followed the vehicle on N. Pearl St. and got behind the vehicle at Summit St. The vehicle had an Ohio registration AYB-6882. I requested a validation check on the vehicle and it's (sic) owner. The dispatcher advised it came back to a Company. The vehicle veered to the left and rode the double yellow line from Summit St. to about Spellman. The vehicle started into the curve on N. Pearl St. and touched the double yellow line at the top of the curve and then went back to center. The vehicle continued North and stayed close to the double yellow line. The vehicle then turned on his left turn signal on (sic) and turned left onto New Burg St. The vehicle turned too soon and went left of center and went into the left lane on New Burg St. until I turned on my emergency lights and the vehicle turned right into the Granville High School entrance.
In upholding appellant's ALS suspension, the trial court made the following conclusions. First, the trial court reviewed the four conditions contained in R.C. 4511.191(H)(1)(a) through (d) and concluded that there is no mention about reasonable suspicion to stop a vehicle. Tr. at 70. However, based on its review of the video tape, the trial court proceeded to find reasonable suspicion to stop appellant. The trial court found that the video tape shows appellant driving on the yellow line and that driving on the yellow line is driving left of center. Id. at 72. The trial court also concluded that appellant improperly made a left turn. Id.
We will not address the issue of whether driving on the yellow line, without crossing the yellow line, constitutes driving left of center. We have reviewed the video tape and find that when appellant made a left turn onto New Burg Street, appellant began his turn too soon which resulted in his vehicle crossing the double yellow line as he completed the turn. In the case of Statev. Weimaster (Dec. 1, 1999), Richland App. No. 99 CA 36, unreported, we held that "* * * merely one traffic violation is sufficient to establish a reasonable and articulable suspicion to justify a stop of a motor vehicle." Id. at 4. As such, we conclude the officer's stop of appellant was not unconstitutional.
Appellant's First and Second Assignments of Error are overruled.
 III
In his Third Assignment of Error, appellant contends the trial court erred when it regarded the BMV Form 2255 as primafacie proof that the arresting officer had reasonable grounds to believe that appellant was operating his vehicle while under the influence of alcohol since the form merely stated that appellant had driven left of center. We disagree.
In support of this assignment of error, appellant argues the arresting officer never stated, in BMV Form 2255, the grounds for believing appellant was operating a motor vehicle while under the influence of alcohol as required by R.C. 4511.191(D)(1)(c)(i). Rather, the form merely indicated appellant drove left of center. Appellant did not raise this argument at the ALS suspension hearing. Instead, the only deficiency appellant raised about the BMV form concerned improper notarization. Tr. at 57. Having failed to raise this issue at the ALS suspension hearing, we find appellant waived the issue for purposes of appeal.
Appellant's Third Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Licking County Municipal Court, Licking County, Ohio, is hereby affirmed.
By: Wise, J. and Reader, V. J., concur.
Hoffman, P.J., concurs separately.
[1] The record indicates that on January 20, 2000, the scheduled trial date, appellee moved to dismiss the OMVI charge due to technical problems with the videotape recording of the traffic stop. The trial court granted the motion. The trial court also dismissed the charge of driving with an expired driver's license upon the motion of appellee. The remaining charge, driving left of center, proceeded to trial. After appellee presented its case, the trial court found appellant not guilty of driving left of center.