DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Wood County Court of Common Pleas which suppressed the traffic stop of appellee, Eric R. Noss, which eventually led to his being charged with driving while under the influence, in violation of R.C. 4511.19(A)(1) and (3), failure to wear a safety belt, in violation of R.C. 4513.263, and violation of the "rules for turns at intersections," in violation of R.C. 4511.36.[1] For the reasons that follow we affirm the decision of the trial court.
On January 19, 2000, appellee filed a motion to suppress and/or dismiss on the basis that appellee did not commit a traffic offense and, therefore, the troopers had no basis to stop appellee. A hearing was held on February 7, 2000. The following evidence was adduced. On January 4, 2000, appellee turned right onto State Route 20 ("S.R. 20") from the right-hand turn lane of Helen Drive. Sergeant Raymond Pachecco, Jr., with the Ohio State Highway Patrol, testified that he observed appellee stop at the stop sign on Helen Drive and then pull immediately at an angle into the left-hand lane of S.R. 20. Pachecco testified that appellee then turned left, in less than two-tenths of a mile, into the entrance ramp for southbound Interstate 75 ("I-75"). But for the allegedly improper turn, Pachecco observed no other traffic violations. Pachecco considered appellee's maneuver to be a traffic violation, thereby giving Pachecco reasonable articulable suspicion to pull appellee over. Pachecco observed no turn signal on appellee's vehicle. Trooper Frank Murua, Jr., similarly testified that he observed appellee come to a stop and then make a right-hand turn into the far left lane of S.R. 20 and that appellee turned left one-thousand feet later up the entrance ramp to I-75. Neither trooper saw any other vehicle, besides appellee's, exiting Helen Drive.
Alan J. Witker testified on behalf of appellee. Witker testified that he had been with appellee at Jed's Bar and Grill, that they left at the same time, and that he observed appellee's right-hand turn. Witker stated that he was in the left-hand turn lane next to appellee when appellee turned right. Witker testified that appellee turned into the right-hand lane initially, with his right turn signal activated, and that appellee then, within approximately fifty feet, while using his left turn signal, changed into the left-hand lane. When the troopers' vehicle passed him, Witker turned left onto S.R. 20. He observed the troopers' car make a U-turn to pursue appellee.
The trial court found in its judgment entry, filed February 8, 2000, that appellee "was making a right turn and as he did so he turned into the left lane traveling West rather than directly into the right lane traveling West." The trial court held that appellee's turn into the left lane was reasonable and practical under the circumstances. Specifically, the trial court stated:
 "Under the Fourth Amendment every search or seizure by a Government Agent must be reasonable. Law enforcement officers may initiate an investigation if reasonable articulable suspicion of criminal activity exits [sic]. Terry v. Ohio (1968), 392 U.S. 1. To meet this standard the Government must point to a specific and articulable facts [sic], together with rational inferences drawn from those facts, that reasonable [sic] suggest that criminal activity has taken place. State v. Bobo
(1988), 37 Ohio St.3d 177, 178. The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. State v. Freeman (1980), 64 Ohio St.2d 291.
 "The touchstone of the Fourth Amendment is reasonableness. The facts as presented at hearing show, and this court determines, that defendant's turn was not only reasonable, but practical under the circumstances in that he immediately entered the left lane to make a left turn. The statute in question was not designed to prohibit such a move in the circumstances presented at hearing. Therefore, defendant's motion to suppress is granted."
Having found no traffic violation, the trial court held that the troopers had no reasonable articulable suspicion of criminal activity to warrant the stop. The state filed a motion for reconsideration, on February 11, 2000, of the trial court's judgment entry, which was eventually overruled.
The state timely appealed and raises the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "I. THE COURT ERRED IN FINDING THERE WAS NO ARTICULABLE REASONABLE SUSPICION TO STOP THE APPELLEE'S CAR WHEN IT WAS OBSERVED MAKING A WIDE RIGHT TURN TWELVE (12) FEET FROM THE RIGHT EDGE OF THE ROADWAY AND ITS FINDING WAS AN ERROR AS A MATTER OF LAW.
 "A. THE TRIAL COURT UTILIZED THE WRONG STANDARD OF PROOF IN DECIDING THAT THE STATE TROOPERS HAD NO REASONABLE ARTICULABLE SUSPICION TO BELIEVE THE DEFENDANT COMMITTED A TRAFFIC VIOLATION.
"SECOND ASSIGNMENT OF ERROR
 "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING THE MOTION TO SUPPRESS BASED UPON ITS MISGUIDED APPLICATION OR NONAPPLICATION OF THE RULES OF STATUTORY INTERPRETATION AND CONSTRUCTION
"THIRD ASSIGNMENT OF ERROR
 "III. THE FINDING BY THE TRIAL COURT THAT THE DEFENDANT'S CAR WAS STOPPED PRIOR TO THE SOUTHBOUND EXIT RAMP OF I-75 IS MATERIAL AND AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND IS AN ABUSE OF DISCRETION."
Insofar as the state's assignments of error are interrelated, we will consider them together. In its first assignment of error, the state argues that the trial court improperly heightened the burden of proof from reasonable articulable suspicion to proof beyond a reasonable doubt. The state asserts that the issue is whether the trooper had a reasonable articulable suspicion that appellee had not made a right-hand turn as close as practicable to the right-hand curb or edge of the roadway, not whether the judge believed appellee, in fact, was guilty of a violation of R.C. 4511.36. The state further argues, citing to a number of driver training and safety materials, that appellee's turn was improper.
In its second assignment of error, the state argues that the trial court misinterpreted and misconstrued R.C. 4511.36(A) because it failed to enter into any analysis regarding the meaning of "shall" or "practicable" as stated in the statute. Moreover, the state argues that if the statute is ambiguous we should consider the publications of the Ohio Department of Public Safety, the Ohio Department of Highway Safety, the Ohio Bureau of Motor Vehicles and the Ohio State Highway Patrol, insofar as these entities are granted the authority to supervise and conduct education programs for driver training, schools, examiners, and issue driver examinations, to determine the statutory meaning and intent of R.C. 4511.36(A).
In its third assignment of error, the state argues that the trial court incorrectly stated in its opinion that appellee's vehicle was stopped before its left turn onto I-75. According to the state, this discrepancy bolsters the state's position that appellee's turn was impractical, because appellee did not actually turn left.
Initially, with respect to the state's third assignment of error we find the state's argument to be without merit. As evidenced by its analysis of the facts, the trial court clearly understood the material fact, which was that appellee intended a left-hand turn onto I-75. Whether appellee was on the entrance ramp, or was about to enter the entrance ramp, is immaterial to the court's analysis.
We also find the remainder of the state's arguments to be without merit. Despite the state's argument to the contrary, we find that the trial court correctly stated and applied the applicable law.
"The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." Statev. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; Statev. Freeman (1980), 64 Ohio St.2d 291, syllabus. In order to conduct an investigative stop of a motor vehicle, a police officer must have an articulable and reasonable suspicion that the motorist is engaged in criminal activity or is operating his vehicle in violation of the law.Delaware v. Prouse (1979), 440 U.S. 648, 663. See, also, State v.Brandenburg (1987), 41 Ohio App.3d 109, 110. The facts presented must be judged against an objective standard of whether the facts available to the officer, at the time of the seizure or search, would warrant a man of reasonable caution in the belief that the action taken was appropriate.Terry v. Ohio (1968), 392 U.S. 1, 21-22.
We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See Maumee v. Johnson
(1993), 90 Ohio App.3d 169, 171. The trial court judges the credibility of the witnesses and the weight of the evidence at a motion to suppress hearing. State v. Fanning (1982), 1 Ohio St.3d 19, 20. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the legal standard set forth in Terry, supra. See State v. Davis
(1999), 133 Ohio App.3d 114, citing State v. Klein (1991),73 Ohio App.3d 486, 488. "If the specific and articulable facts available to an officer indicate that a motorist may be violating a traffic law, the officer is justified in stopping the motorist to investigate." State v. Mortensen (Feb. 27, 1998), Erie App. No. E-97-107, unreported, citing, State v. Carlson (1995), 102 Ohio App.3d 585,591.
In making our determination, the state urges us to adopt the interpretations of various agencies regarding how to make a proper right-hand turn. For example, the National Highway Traffic Safety Administration's "Responsible Driving Handbook," states that to make a proper right turn, the driver should "Turn into the lane nearest the curb, then change lanes if needed." We, however, find that this interpretation adds a specific element to the statute that does not exist as written, i.e., that the driver must turn from a right-hand lane into the right-hand curb lane. To the contrary, R.C. 4511.36(A) states: "Approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." We find that "as close as practicable to the right-hand curb or edge of the roadway" does not require that a right-hand turn be made into a right-hand lane under all circumstances.
In this case, soon after turning onto S.R. 20, appellee was intending to turn left onto I-75. It is undisputed that appellee began his right-hand turn as close as practicable to the right-hand curb, crossed over the right-hand lane and continued in the left-hand lane.[2]
Accordingly, given the facts in this case, we find that appellee's approach and turn was made as close as practicable to the right-hand curb lane before entering the left-hand lane of traffic. Moreover, we note that a vehicle is permitted to change lanes so long as the driver has first ascertained that such movement can be done safely. See R.C.4511.33. By all accounts, besides the troopers' car, appellee's car, and possibly Witker's, there was no traffic on S.R. 20 at the time of the alleged incident.
Accordingly, in light of the totality of the circumstances in this case, we find that the trial court did not abuse its discretion in finding that Pachecco and Murua did not have a reasonable and articulable suspicion that appellee may have operated his vehicle in violation of the law. We therefore find the state's assignments of error not well-taken.
On consideration whereof, this court finds that the trial court did not err in suppressing the traffic stop and the judgment of the Perrysburg Municipal Court is therefore affirmed. Court costs of this appeal are assessed to appellee state of Ohio.
Melvin L. Resnick, J., James R. Sherck, J., Richard W. Knepper, P.J., JUDGES CONCUR.
 ____________________________ JUDGE
[1] R.C. 4511.36, Rules for turns at intersections, states:
 "The driver of a vehicle intending to turn at an intersection shall be governed by the following rules:
 "(A) Approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway."
[2] "Practicable" is not defined in case law as it applies toR.C.4511.36(A); however, Webster's Dictionary defines "practicable" as "capable of being put into practice or ofbeing done or accomplished: FEASIBLE * * *." Merriam-Webster's Collegiate Dictionary (1996) 914.