DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Huron County Court of Common Pleas which denied appellant's motion to suppress and found him guilty of one count of drug abuse in violation of 2925.11(A). For the reasons that follow, this court reverses the judgment of the trial court.
Appellant sets forth the following assignments of error:
 "1. The trial court committed reversible error when it denied the Appellant/Defendant's Motion to Suppress.
 "2. The trial court errored when it twice denied Appellant/Defendant's counsel's request to review a copy of Captain McLaughlin's computer notes.
 "3. Trial court errored when it denied Appellant/Defendant's Motion in Limine."
The undisputed facts that are relevant to the issues raised on appeal are as follows. On July 15, 1999, appellant was stopped by Captain Robert McLaughlin of the Huron County Sheriff's Office after driving away from an apartment complex in Norwalk, Ohio. McLaughlin had been observing activity in the area as part of an ongoing drug investigation. Crack cocaine was confiscated from appellant's car. On August 24, 1999, appellant was indicted and charged with one count of drug abuse in violation of R.C. 2925.11(A). On September 28, 1999, appellant filed a motion to suppress all statements made and evidence seized on July 15, 1999, and on October 18, 1999, a hearing was held on the motion.
The only witness to testify at the suppression hearing was Captain McLaughlin, who was called by the state. McLaughlin testified that in August 1998, he received information from several informants that a black male named Marcus from the Oberlin area was coming to Huron County on a regular basis to sell crack cocaine. On the night of September 17, 1998, McLaughlin was in an unmarked van surveilling a possible drug transaction between an undercover agent and another man when he saw a red Neon automobile driven by a black male pull alongside the van. McLaughlin was able to observe a conversation between the driver and another male but could not hear them and did not see a drug sale take place. McLaughlin did not know the identity of the driver.
McLaughlin further testified that after the September 1998 surveillance he received information from another informant that a local man named Allen Randleman was buying crack cocaine from a person named Marcus from Oberlin. McLaughlin ultimately heard from at least three sources that Randleman was buying crack cocaine from the man named Marcus on a regular basis, usually on Thursday evenings. Based on the information received from the sources, on July 15, 1999, McLaughlin parked in an area near a bar Randleman was known to frequent. Shortly thereafter, McLaughlin observed a black male drive by in a car that the officer knew was registered to Randleman. McLaughlin followed the car to an apartment complex and waited nearby. He then saw two black males walk toward Randleman's apartment and, a few minutes later, saw a red Neon pull out. The officer did not recognize the driver of the Neon. McLaughlin ran the license plate on the Neon and learned that the car belonged to a Linda Isabell from Oberlin. McLaughlin believed that the Neon was the same car he had seen driven by a black male on September 17, 1998. The officer further stated that he followed the Neon, pulled the car over at a gas station and told the driver that he was conducting a drug investigation. He testified that he had not observed appellant engage in any criminal behavior.
On cross-examination, McLaughlin stated that he was sure he saw appellant go into the apartment complex but did not know for certain who was driving the red Neon when it pulled away until he stopped it and approached it. McLaughlin testified further that he could not identify the driver of the red Neon on September 17, 1998, but that he "had a belief" it was Marcus from Oberlin. The officer did not articulate a reason for that belief.
On November 12, 1999, the trial court found that McLaughlin was justified in making an investigatory stop and denied appellant's motion to suppress. In so doing, the trial court found that, based on all of the information he had at the time, McLaughlin had reason to be suspicious that a drug transaction had taken place in Randleman's apartment on July 15, 1999. The trial court further found that the facts that two black men left the apartment and the defendant, a black male, drove away from the apartment parking area in a car registered to an Oberlin resident were sufficient to give the officer a reasonable, articulable suspicion that the driver of the Neon was Marcus from Oberlin, the person McLaughlin's informants had been telling him about.
In support of his first assignment of error, appellant asserts that the facts available to Captain McLaughlin did not add up to an articulable suspicion that a crime was occurring or was about to occur. Appellant argues that McLaughlin was not able to show that appellant was the black male he saw in the car on September 17, 1998, and that the officer acted on a "hunch," not on a reasonable, articulable suspicion.
In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of the witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275 . This court's function is to review the record to determine whether substantial evidence exists to support the ruling of the trial court. Maumee v. Johnson (1993),90 Ohio App.3d 169.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. Terry v. Ohio
(1968), 392 U.S. 1; State v. Klein (1991), 73 Ohio App.3d 486. In justifying a particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate.Terry, supra, at 19-20. Such a determination must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988),37 Ohio St.3d 177. The Ohio Supreme Court has determined that "the propriety of an investigatory stop must be viewed in light of the totality of the surrounding circumstances * * *" Bobo, supra, paragraph one of the syllabus, and that these circumstances are to be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Freeman (1980), 64 Ohio St.2d 291, 295.
In the case before us, if we view the circumstances of July 15, 1999 through the eyes of Captain McLaughlin, Freeman, supra, we see a black male, name unknown, in a red Neon pulling away from an apartment complex where drug sales were believed to take place regularly. This was the same location at which McLaughlin observed what he thought was a drug transaction in September 1998. The only connection, however, between what the officer thought was a drug transaction on September 17, 1998, and what he thought was another such transaction on July 15, 1999, was a red Neon driven by a black male. McLaughlin did not run the plates on the car when he saw it on September 17, 1998 so he had no way of knowing whether the car he saw on July 15, 1999 was the same one. McLaughlin also was unable to state with certainty that the black male he saw driving the red Neon on September 17, 1998 was appellant. Further, McLaughlin testified that he did not see any drug transactions take place and that "[w]hatever happened happened inside the apartment." Further, McLaughlin did not see appellant engage in any suspected drug transactions or witness him violating any traffic laws prior to the stop.
Upon consideration of the evidence that was before the trial court at the hearing on the motion to suppress and the law as set forth above, this court finds that Captain McLaughlin did not demonstrate a reasonable suspicion, based upon specific and articulable facts, that criminal behavior had occurred or was imminent at the time he stopped appellant. It appears to this court that Captain McLaughlin's decision, while based on what arguably was a good hunch, fell short of reasonable suspicion. Accordingly, we find a lack of substantial evidence to support the trial court's decision denying the motion to suppress. Appellant's first assignment of error is well-taken.
Upon consideration of our determination as to appellant's motion to suppress, appellant's second and third assignments of error are found to be moot.
On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Huron County Court of Common Pleas is reversed. This cause is remanded to the trial court for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Richard W. Knepper, J.
 Mark L. Pietrykowski, P.J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.