{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that denied appellant's motion to suppress. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant Shawn C. Loofbourrow sets forth the following assignments of error:
 {¶ 3} "The trial court erred when it failed to suppress the illegal stop and the fruits of the subsequent illegal search and seizure of the defendant-appellant, in violation of the defendant-appellant's constitutional rights.
 {¶ 4} "The trial court erred when it ordered the defendant-appellant to pay unspecified court costs, fees, and to make an unspecified, unsubstantiated sum of restitution."
 {¶ 5} On August 20, 2002, appellant was indicted on one count of robbery, in violation of R.C. 2911.02, in connection with the August 1, 2002 armed robbery of a store in Maumee, Ohio. Appellant entered a plea of not guilty and on October 4, 2002, he filed a motion to suppress all evidence gathered as a result of his warrantless detention and arrest. A hearing was held on the motion on October 18, 2002, and the following evidence was presented by the state.
 {¶ 6} Maumee Police Officer Brian Mock testified that while he was on road patrol in the city of Maumee on the afternoon of August 1, 2002, he heard a radio dispatch reporting an armed robbery that had just occurred at Wholesale Installers, located on Illinois Avenue in Maumee. The dispatch described the suspect as wearing a black t-shirt and dark pants with white shoes and a white pillowcase or hood over his head. When Officer Mock heard the broadcast, he was less than a quarter mile from Wholesale Installers. He immediately drove toward the business and, as he approached it, he saw a brown car pull out from the service drive that leads behind Wholesale Installers and some other businesses. Mock did not see any other vehicles coming from the complex or see anyone walking or running from the immediate area. He testified that less than 10 seconds passed from the time he heard the dispatch until he saw the brown car. Mock observed the car pass through the intersection and then activated his overhead lights. The car then pulled over. The officer estimated that 30 to 40 seconds had passed between the time of the dispatch and the time the car pulled over. When Mock pulled behind the brown car, another patrol car driven by Officer Patrick Sullivan pulled behind him.
 {¶ 7} Officer Mock approached the car and spoke to the driver, explaining that he was investigating a robbery that had just occurred. The driver then looked at the officer, pointed to his passenger and said, "I don't know what he did." Officer Mock testified that the passenger, whom he identified as appellant, was wearing a black t-shirt and dark pants. Officer Mock testified that when he looked at the passenger he could see his carotid artery pulsating and his heart beating through his t-shirt. He stated that the passenger did not look at him until he said, "Excuse me," and that, as the passenger turned toward him, the officer could see "all the whites of his eyes" and noticed the man's face "starting to go white." Based on the driver's comment and the description that had been broadcast of the suspect, the officer decided to investigate further and asked the passenger to step out of the car. Officer Mock spoke to the man briefly and then decided to pat him down for weapons. As the officer patted down the man's outer clothing, he felt a large lump in one of the pants pockets and saw paper sticking out. When Mock pulled at the paper, a large wad of money came out. The officer then told appellant he was going to place him in handcuffs and put him in the squad car while he talked to the other occupants of the brown car. He told appellant he was not under arrest at that time. When Officer Sullivan found a duffel bag in the car with a handgun in it, Officer Mock placed appellant under arrest and read him his Miranda rights.
 {¶ 8} Officer Sullivan's testimony as to the events immediately following the robbery and the officers' contact with appellant essentially corroborated that of Officer Mock. At the conclusion of testimony, the trial court denied the motion to suppress evidence seized as a result of the stop. On November 12, 2002, appellant entered a plea of no contest to the indictment. The plea was accepted and a finding of guilty was made. On December 6, 2002, appellant was sentenced to five years imprisonment.
 {¶ 9} In his first assignment of error, appellant asserts that the officers who arrested him did not have reasonable suspicion for stopping the car and that the subsequent search was illegal. Appellant argues that the officers did not observe any criminal conduct or traffic violation before making the stop and that the police dispatch did not mention a car or accomplice.
 {¶ 10} In examining a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of the witnesses are functions of the trier of fact. State v. Depew (1988),38 Ohio St.3d 275. Where the factual findings of the trial court are clearly supported by the evidence, its ruling will not be disturbed on appeal, absent an error of law. Depew, supra.
 {¶ 11} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless investigatory stop of an individual without probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; State v. Freeman (1980),64 Ohio St.2d 291, syllabus. In justifying a particular intrusion, the police officer must be able to point to specific and articulable facts which would warrant a man of reasonable caution in the belief that the action taken was appropriate. Terry, supra, at 19-20.
 {¶ 12} Upon viewing the propriety of the stop in this case in light of the surrounding circumstances, we find that the two officers clearly conducted a legal investigatory stop pursuant toTerry, supra. Both officers testified that they spotted the car in which appellant was a passenger within 10 to 20 seconds of hearing the broadcast that the robbery had just occurred. The officers agreed that the car was driving away from the parking lot adjacent to the store that was robbed and that it was the only car they observed coming from that location. The officers did not see any foot traffic in the immediate area. Officer Mock testified that there were no other cars in that part of the lot near the store and that he was interested in asking the occupants of the car whether they had observed anything related to the robbery. Further, once the officers approached the car to question the occupants, they noticed that the passenger was wearing the same type of clothing as the suspect was reported to be wearing. Based on our review of the law and the facts as summarized above, we find that both officers were able to point to specific and articulable facts that warranted their belief that the investigatory stop was appropriate. Accordingly, the trial court's decision to deny the motion to suppress was supported by the evidence and appellant's first assignment of error is not well-taken.
 {¶ 13} As his second assignment of error, appellant asserts that the trial court erred by ordering him to pay unspecified court costs, fees and restitution. Our review of the record shows that the trial court handled two cases at the same sentencing hearing — the instant robbery case, and another unrelated case, no. CR-02-2556, in which appellant was convicted of receiving stolen property. With respect to the robbery conviction, the trial court did not order restitution. The order to make restitution is related to appellant's receiving stolen property conviction, which is not the case from which appellant has appealed. Therefore, any argument as to the restitution ordered in case no. CR-02-2556 is not properly before this court.
 {¶ 14} Pursuant to R.C. 2947.23, the trial court was required to "include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." However, with respect to the trial court's ability to order a defendant to pay "any fees permitted pursuant to R.C. 2929.18(A)(4)," this court previously held in State v. Holmes, 2002 Ohio 6185, that before imposing sanctions pursuant to R.C. 2929.18(A)(4), "the court shall consider the offender's present and future ability to pay the amount of the sanction[.]" R.C. 2929.19(B)(6). Contrary to appellant's assertion, however, the trial court is not required to hold a hearing to make this determination, R.C. 2929.18(E), although there must be some evidence in the record that the court considered the offender's present and future ability to pay the sanction imposed. State v. Fisher, 2002 Ohio 2069. The trial court is not required to make findings on the record or in its judgment entry. In this case, the trial court noted that it had considered appellant's presentence investigation report, which indicated that appellant had earned approximately $60,000 per year for the past seven years as a sub-contractor laying carpet for retailers.
 {¶ 15} Based on the foregoing, this court finds that the trial court did not err when it ordered appellant to pay court costs and fees in this case. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 16} On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
Judgment Affirmed.
Knepper, J., Lanzinger, J., Singer, J., concur.