OPINION
This is an appeal from the Portage County Court of Common Pleas. Appellant, the state of Ohio, appeals the trial court's judgment entry granting the motion to suppress of appellee, Terry A. Brantley.
On July 28, 1999, the Portage County Grand Jury returned a true bill on an indictment against appellee, charging him with possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11(A)(C)(4)(a), and possession of criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A)(C). On August 9, 1999, appellee was arraigned, and he entered a plea of not guilty to the charges. On November 1, 1999, appellee filed a motion to suppress the evidence gained from the search of his person, claiming that the search was done without probable cause and that the search was illegal and unconstitutional. A hearing on the motion to suppress was held on November 8, 1999.
The evidence at the hearing revealed that on March 15, 1999, Deputy James T. Aklin ("Deputy Aklin") of the Portage County Sheriff's Department was on routine patrol in Ravenna Township. At about 2:15 p.m., he observed appellee, in a high drug area, attempting to waive down a car. Deputy Aklin stated that he was able to identify appellee because he had had contact with him and knew him very well. He had, in the past, arrested appellee numerous times, and he said that appellee "walks the area that [he] patrols every day * * * and [they] have a little conversation [a] couple times a week."
Deputy Aklin revealed that appellee was "trying to get a car to stop." He also explained that "they take their hands and waive at cars like [they] want something. All the people that [officers have] busted down there or arrested as drug dealers all do this type of action, and [officers] observe and watch for it. And it's like trying to get cars to stop and see if they want to buy anything."
On that afternoon, when Deputy Aklin saw appellee waiving down the car, he could not recall whether the auto stopped, but he said that the vehicle did slow down. Deputy Aklin noticed that after appellee saw him, he began walking quickly. Appellee kept his left hand behind his back, and he was "standoffish" and "jumpy." This caused Deputy Aklin to become suspicious because he had never seen appellee behave that way. Deputy Aklin then asked appellee a couple of times what he had in his hand, but appellee refused to show him what was in his hand. Thereafter, Deputy Aklin exited his automobile and grabbed appellee's wrist to see if appellee was carrying a gun or a knife. He was unable to open appellee's tightly clenched hand, so he called for backup. Deputy Aklin mentioned that he and appellee had wrestled and had confrontations in the past. When the help arrived, appellee was handcuffed and the items in his hand, a rock of crack and a crack pipe, were seized. He was placed under arrest and taken to the police station.
On cross examination, Deputy Aklin revealed that appellee was on the wrong side of the roadway for the direction he was walking, and that was illegal. He explained that at times people are charged with that crime if they cause interference. Deputy Aklin claimed that appellee was "at that time" causing interference because "he was trying to get [a car] to stop." He explained that appellee did not commit a crime, but he "attempted to commit a crime * * * by hindering the movement of a vehicle and [that] he had seen [Deputy Aklin's] car and walked away real quick."
At the conclusion of the suppression hearing, the trial judge stated that "* * * in this case, if we analyze this, this individual was doing nothing wrong." The judge added that appellee:
 "probably was trying to sell drugs * * * and the Officer thought he was doing that. He was waiving at an automobile, the Officer stopped him and talked to him, has no charge against him. He begins to walk away, [the Officer] wants to see what's in his hand, but there was no danger to him because the Officer is stopped there, he didn't have to stay there. So [appellee] didn't present a danger that he had to be checked for weapons."
In a judgment entry dated November 10, 1999, the trial court granted appellee's motion to suppress. Appellant timely filed the instant appeal from that entry, pursuant to Crim.R. 12(J), and now asserts the following as error:
 "The trial court erred by suppressing the evidence seized from Defendant-Appellee."
Appellant's sole contention is that the trial court erred by suppressing the evidence seized from appellee because Deputy Aklin had reasonable suspicion to stop and search appellee.
In justifying an investigative stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terryv. Ohio (1968), 392 U.S. 1, 21. The assessment is to be judged against an objective standard. Id. at 21-22. "An inarticulate hunch or suspicion is not enough. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law. Terry * * *; Brown v. Texas
(1979), 443 U.S. 47; Delaware v. Prouse (1979) 440 U.S. 648." (Parallel citations omitted.) State v. Kish (Nov. 5, 1999), Lake App. No. 98-L-148, unreported, at 2, 1999 WL 1073615, quoting Mentor v. Webb (June 30, 1993), Lake App. No. 92-L-158, unreported, at 4. The determination of a reasonable suspicion must be made in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus.
In State v. Freeman (1980), 64 Ohio St.2d 291, 295, in holding that an officer had the right, under the circumstances, to minimally intrude upon an appellant, the Supreme Court of Ohio looked to the following specific and articulable facts:
 "(1) the location of the investigation being a high crime area; (2) the officer being quite aware of recent criminal activity in the motel parking lot in which [the] appellant was parked; (3) the time of night being 3:00 a.m.; and (4) the appellant sitting alone in the car at the rear of the building for approximately 20 minutes with the engine turned off."
Here, Deputy Aklin stated that the area he was patrolling had a lot of drug activity. He stopped appellee to question him because he observed appellee attempting to waive down cars. When appellee saw Deputy Aklin, he began walking away quickly. Hence, when considering the totality of the circumstances, such as the area being one known as a high drug area, it is our determination that Deputy Aklin had a reasonable suspicion to initially detain appellee to question him to ascertain what his purpose was in trying to waive down cars.
We must next determine if appellee's continued detention was reasonable. It is well-settled law that an officer does not have the authority to automatically conduct a frisk of a detainee when a valid investigative stop has been initiated. Kish, supra, unreported, at 3. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." Bobo, 37 Ohio St.3d at paragraph two of the syllabus.
Additionally, a police officer is permitted under certain circumstances to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993), 67 Ohio St.3d 405, 408. The purpose of this limited search is to allow an officer to pursue his or her investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime. Id. The United States Supreme Court sets forth the standard for a "frisk" as follows:
 "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27.
When police officers are conducting a lawful Terry search for weapons, they may "seize nonthreatening contraband when its incriminating nature is `immediately apparent' to the searching officer through his sense of touch." Evans, 67 Ohio St.3d at 414, fn. 5, citing Minnesota v.Dickerson (1993), 508 U.S. 366. However, during the search, an officer is prohibited from handling the object previously determined not to be a weapon in order to establish its incriminating nature. Id. Once an officer locates contraband, the "immediately apparent" requirement is at issue and must be satisfied.
In the case at bar, at the suppression hearing, Deputy Aklin thought appellee may have been selling drugs, so he stopped him and talked to him, but he had no charge against him. Appellee then began to walk away. Deputy Aklin did not testify that he feared for his safety, but he believed that appellee may been carrying a gun or knife in his hand. Deputy Aklin wanted to see what was in appellee's hand even though there was no danger to him.
We note that under a Terry pat-down search, an officer is not entitled to reach into a detainee's pockets or ask the detainee to empty his or her pockets on pure speculation that a weapon might be present. SeeEvans, 67 Ohio St.3d at 414-416. It is our view that this was a situation where Deputy Aklin relied on pure speculation that appellant may have been carrying a weapon on his person. As previously mentioned, Deputy Aklin did not testify that he feared for his safety. Further, since the record did not demonstrate that anything was "immediately apparent" to Deputy Aklin as contraband, its subsequent removal was not justified. See Kish, supra, unreported; Warren v. Provitt (Oct. 22, 1999), Trumbull App. No. 97-T-0228, unreported. Accordingly, appellant's argument lacks merit.
For the foregoing reasons, appellant's assignment of error is not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., concurs, O'NEILL, J., dissents with Dissenting Opinion.