OPINION
Terrance Martin was found guilty of possession of crack cocaine in an amount greater than one hundred grams by a jury in the Clark County Court of Common Pleas. The trial court sentenced him to ten years imprisonment, fined him $10,000, and suspended his driver's license for five years following his release.
The state's evidence established the following facts.
At approximately 5:00 p.m. on June 3, 1999, State Highway Patrol Officer C. A. Miller observed a disabled vehicle with its hood up on the right side of eastbound Interstate 70. He pulled up approximately twelve to fifteen feet behind the disabled vehicle with his lights on. While sitting in his patrol car, Officer Miller observed Martin, the owner of the vehicle, come out from under the hood in the front of the vehicle and walk to the passenger side. Martin then reached into the passenger door of the vehicle. According to Officer Miller, Martin looked at him and then returned to the front of the vehicle.
At this time, Officer Miller exited his vehicle and walked to the rear passenger side of the disabled vehicle. He then yelled for Martin to come to him. When Martin did, Officer Miller asked him what had happened and what he could do to help. Officer Miller also asked Martin for identification, which Martin could not produce. At this point, another man came around the vehicle from where he had been under the hood in the front. The man asked Officer Miller if Miller knew him and told Officer Miller that his name was Anjuan Henry. Upon hearing the name, Officer Miller realized that Henry had several outstanding warrants for his arrest. He therefore told Henry to return to the disabled vehicle and sit in the passenger seat. He patted Martin down, confirmed information regarding Martin's identity, and placed him in the front seat of his patrol car.
Officer Miller then proceeded to call dispatch to check whether the warrants for Henry's arrest were still valid. To do so, he had to go back to the disabled car to get Henry's Social Security Number and date of birth. He then noticed for the first time a brown paper bag sitting on the ground just outside the passenger door of the disabled vehicle. When Officer Miller returned to his patrol car, dispatch confirmed that the warrants against Henry were still valid; however, Miller waited for backup before arresting Henry.
When backup arrived, Martin was placed in the "cage" in the rear of the newly arrived patrol car for safety purposes. This second patrol car was parked behind the first. Henry was arrested and placed in the front seat of the first patrol car. Once Henry had been secured, Martin was released from the second patrol car, and the officers questioned him regarding what assistance he needed. He indicated that he believed that the car had overheated and that he thought he could fix it with some water. Thus, the backup officer agreed to take Martin to get some water and then bring him back to his car. Before taking Martin to get water, however, the officers indicated to him that he should lock up his car.
Martin, who at this time was on the passenger side of the second patrol car, walked toward his car on the passenger side of the patrol cars. When he passed Henry, who was sitting in the front seat of the first car, he nodded his head and raised his eyes to Henry. He then cut in front of the first patrol car and approached his car on the driver's side, which was the side nearest to the traffic. Officer Miller testified that this exchange with Henry had given him an uneasy feeling and that he had followed Martin to his car, walking on the passenger side of the disabled car. Officer Miller watched while Martin secured his vehicle but did not lock the passenger side door, or even close it. Martin then placed something in his trunk and walked back to the second patrol car.
When Martin walked away from his vehicle, Officer Miller, who had again noticed the brown paper bag sitting on the ground beside the passenger door of the disabled car, picked up the bag and looked into it. He saw that it contained a large quantity of crack cocaine. The amount was later determined to be 142.250 grams. At this point, Martin was taken into custody. Henry was questioned about the cocaine but refused to say anything.
When Martin was questioned, he indicated to Officer Miller that he and Henry had gone to Trotwood to visit Martin's cousin. They had stopped at a McDonald's to eat. While Martin was eating, Henry had made a phone call and then indicated that they needed to wait for someone. While Henry was talking to the man who subsequently arrived, Martin called his cousin for directions to her home. He was unable to understand the directions, and the two men did not, in fact, visit Martin's cousin. With regard to the cocaine, Martin stated that it was not his and that it must be Henry's because it was not his. He further stated that he had not seen Henry purchase the drugs and had not known that Henry had had the drugs.
Both men were taken to the police station, where an officer attempted to further question Martin. However, at that time, he indicated that he wanted a lawyer, and questioning stopped.
Martin was charged with possession of crack cocaine in an amount greater than one hundred grams, and he pled not guilty. On January 27, 2000, he filed a motion to suppress the cocaine found in the brown paper bag and statements that he made to Officer Miller at the scene. Following a hearing, the trial court denied Martin's motion. Martin and Henry were tried together in February of 2000. That trial resulted in a hung jury. Martin was tried separately on August 24 and 25, 2000, and the jury found him guilty. The trial court sentenced Martin to ten years imprisonment, a $10,000 fine, and a five-year license suspension following his release.
Martin appeals, raising three assignments of error.
 "I. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Under this assignment of error, Martin appears to make both a sufficiency of the evidence argument and a manifest weight of the evidence argument. Therefore, we will review the facts under both standards. An appeal based on sufficiency of the evidence requires us to consider whether any rational trier of fact could have found that the evidence presented by the prevailing party was sufficient to justify the trial court's decision. See State v. Thompkins (1997), 78 Ohio St.3d 380,386-87, 1997-Ohio-52, 678 N.E.2d 541; see also State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra, at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
Martin's argument under both standards centers on the issue of whether he knowingly possessed the crack cocaine found in a bag outside his vehicle. He argues that his statements to the police clearly establish that he did not knowingly possess the cocaine. Specifically, he told police that the cocaine was not his and therefore must have been Henry's. He stated that he had not seen Henry buy the cocaine and had not known that Henry had had it. He argues that these statements established that he had not knowingly possessed the cocaine.
We agree that Martin's statements indicate that he did not know that the cocaine was in the car or where it came from. However, his statement was not the only evidence presented to the jury. The jurors heard evidence of Martin's behavior from which they could have reasonably inferred that he knowingly possessed the cocaine. When Officer Miller pulled up behind his car, Martin walked around to the passenger side of the car and reached in. Following the arrest of Henry, Martin walked past the passenger side of the patrol car where Henry was sitting and nodded and raised his eyes at Henry. Then, when locking up his car, Martin walked to the driver's side, which was near traffic, rather than the passenger side where the bag was sitting. While Martin presented evidence at trial that his car had had power locks and would have had to be started to lock the doors, Officer Martin testified that Martin had not locked the passenger side door and, in fact, had not even closed it.
Furthermore, the men had been on an excursion to Trotwood together. While Martin's statements indicated that he had been eating while Henry made a phone call and had been talking to his cousin on the phone while Henry met with a man, the two were, in fact, together at the same restaurant during the time that Henry apparently received the cocaine. According to Martin, they were in Trotwood to visit his cousin, but he claimed that he had not know where his cousin lived and had been unable to understand her directions. Thus, even according to Martin's statement, the two men went to a McDonald's in Trotwood, met with a man, and returned from Trotwood with cocaine in the car. It is also clear that the drugs came from Martin's car. Significantly, even Martin's statement failed to suggest otherwise.
Therefore, the state presented sufficient evidence from which a jury could have concluded that Martin knowingly possessed the drugs. Furthermore, based on these facts, the jury could have disbelieved Martin's statements to the police that he knew nothing about the drugs. We cannot conclude that the jury clearly lost its way in doing so. Therefore, Martin's conviction was also not against the manifest weight of the evidence.
The first assignment of error is overruled.
 "II. THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN CONTRAVENTION OF THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO STATE CONSTITUTION."
Under this assignment of error, Martin argues that his trial counsel was ineffective because she called no witnesses in his first trial, which resulted in a hung jury, called only one witness in his second trial, and called no witnesses to discuss Martin's character or Henry's drug habits and record.
We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 2064-65. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 2065.
Martin has failed to establish that there is any reasonable probability that the result of his trial would have been different had his attorney called character witnesses. The identity of potential character witnesses and the content of their proposed testimony is not ascertainable from the record before us, and, as such, this argument cannot be raised on direct appeal. Furthermore, to the extent that Martin complains about his trial counsel's performance in his first trial, which resulted in a hung jury, that argument is not relevant to his appeal from his second trial. Even if it were, we believe that a hung jury is an indication that Martin's attorney performed reasonably at his first trial. Thus, we are left with Martin's assertions that his trial counsel was deficient in not calling character witnesses to discuss the character of himself or Henry. It is unclear, however, whether character evidence of Henry would have been admissible under Evid.R. 404 as Henry was not the accused, the victim, or a witness at Martin's trial.
While Martin alleges that his trial counsel failed to put on a defense, it is clear from the record that this was not the case. She called a witness to testify that Martin's car had had power locks that would not operate unless the car was running. The purpose of this testimony was presumably to show that Martin did not go to the driver's side of his car to avoid the drugs and thus to negate any inference that he knowingly possessed the drugs. Martin did not testify. We have no way of knowing what character witnesses would have been available to testify, what they would have said, or how that would have affected the outcome of the trial. We decline to conclude that not calling character witnesses in a criminal trial is per se unreasonable representation. Thus, Martin has not established either that his trial counsel's performance was unreasonable or that he was prejudiced by her performance.
The second assignment of error is overruled.
 "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN OVERRULING HIS MOTION TO SUPPRESS."
Under this assignment of error, Martin argues that the trial court erred in not granting his motion to suppress the crack cocaine found in a bag beside his vehicle.
Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress:
 "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498.
The state argues that the property, i.e., the cocaine, had been abandoned. "It is rudimentary that one does not have standing to object to a search and seizure of property that he has voluntarily abandoned."State v. Freeman (1980), 64 Ohio St.2d 291, 296, 414 N.E.2d 1044, citingAbel v. United States (1960), 362 U.S. 217, 80 S.Ct. 683. There is no question that the brown paper bag containing crack cocaine had been abandoned. It was sitting on the ground next to the interstate, outside of Martin's car. Officer Miller observed the bag sitting there when he placed Henry in the passenger seat of Martin's car. The bag continued to sit there, with Martin appearing to deliberately avoid it, until Officer Miller picked it up. Furthermore, when Officer Miller picked it up, Martin was walking back toward the second patrol car, away from the bag, and he was preparing to leave with another officer. Based on these facts, the trial court determined that Martin had had no property interest in the bag when it was searched. As such, he had no standing to object to Officer's Miller search. The trial court did not err in denying Martin's motion to suppress the crack cocaine found in the brown paper bag.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.