DECISION.
{¶ 1} Defendant-appellant Clark Roper was charged with tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. Roper filed a motion to suppress evidence, claiming that police officers did not have reasonable suspicion to justify stopping him. The trial court agreed and granted Roper's motion.
{¶ 2} The state now appeals. For the reasons that follow, we reverse the judgment of the trial court.
{¶ 3} At the hearing on Roper's motion to suppress, the state presented evidence that on November 14, 2001, at about 1:30 in the morning, Cincinnati Police Officers Chris Vogelpohl and Christopher Wharton were working as part of the city's Street Corner unit. The unit specialized in undercover drug investigation and surveillance, as well as controlled drug purchases and search warrants. At that time, Officer Vogelpohl had worked with the Street Corner unit for over a year and had worked as a patrol officer in the city for three years. He had obtained specialized training in the detection and surveillance of drug activity.
{¶ 4} The officers were conducting surveillance of a portion of Main Street from their unmarked car. The officers had received complaints that drug transactions were occurring there, as well as by a nearby school. The area was known to police for drug activity — undercover officers had previously been to the area to make controlled purchases of drugs and had made arrests for drug trafficking and possession.
{¶ 5} At the time of the offense, Officer Vogelpohl used binoculars to observe a group of people on the corner as they were flagging down passing cars. After watching the group for about twenty minutes, Officer Vogelpohl saw the group flag down Roper's car. Roper pulled over to the right side of the road, and a young man from the group jumped into the passenger seat of Roper's car.
{¶ 6} The young man remained in Roper's car for about two minutes. During that time, the lights were on in Roper's car. Officer Vogelpohl testified that, using his binoculars, he saw that "Mr. Roper was in the driver's seat and the unknown subject was in the passenger seat and the unknown subject was basically leaning over doing something with his hands, which I couldn't see. I just saw him leaning over, looking down at the hand, and Mr. Roper was at that point looking towards his hand at the same time he was looking over. I saw his hand movements, what appeared to me to be an exchange. I can't say that I saw an exchange because the dashboard was in my way. It was — to me, it appeared to be an exchange." Based upon his experience and expertise, Officer Vogelpohl believed that the two men had engaged in a drug transaction.
{¶ 7} At that point, the young man jumped out of Roper's car and ran back to join the others who were sitting on a stoop. Officer Vogelpohl had radioed for a marked police car to respond to the area. As Roper began to pull away, Officer Vogelpohl radioed for the marked car to pull Roper over.
{¶ 8} When Roper pulled over, Officer Vogelpohl asked him to get out of his car. As he asked Roper whether he understood why he had been stopped, Roper was "kind of mumbling." Officer Vogelpohl asked Roper to open his mouth. When Roper opened his mouth, Officer Vogelpohl saw two pieces of crack cocaine in it. Roper refused to spit the crack pieces out. Instead, he "took a big gulp" and swallowed the crack. At that point, Officer Vogelpohl placed Roper under arrest. When he asked Roper how much crack he had swallowed, Roper responded, "Just two small pieces."
{¶ 9} Following a hearing on Roper's motion to suppress, the trial court stated, "The evidence is certainly suspicious, but does not rise to the level necessary to permit a valid stop." We disagree.
{¶ 10} An investigatory stop of a person is lawful under theFourth Amendment to the United States Constitution, as well as Section14, Article I of the Ohio Constitution, where an officer has a reasonable, articulable suspicion that a person is or has recently been engaged in criminal activity.[1] The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity.[2]
"[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[3] In Ohio, "the propriety of an investigative stop by a police officer must be viewed in the light of the totality of the surrounding circumstances."[4]
{¶ 11} In State v. Freeman,[5] a police officer on patrol at 3:00 a.m. drove through a motel parking lot and saw the defendant sitting alone in a car with the engine turned off. About fifteen to twenty minutes later, the officer returned to the parking lot and again saw the defendant sitting in the car with the engine off. At that point, the officer entered the motel to ask the clerk whether there had been any trouble that evening. The officer then saw the defendant drive out of the lot, so the officer pulled him over within a short distance of the motel. The officer explained to the defendant that there had been recent instances of theft and damaging in the parking lot.
{¶ 12} The Supreme Court of Ohio held that the facts gave the officer the right to minimally intrude upon the defendant's freedom. The court mentioned that the following facts supported its conclusion that the officer's intrusion was reasonable: (1) the location was a high-crime area; (2) the officer was quite aware of recent criminal activity in the motel parking lot in which the defendant was parked; (3) the episode occurred at night; and (4) the defendant was sitting alone in the car at the rear of the building for approximately twenty minutes with the engine turned off.
{¶ 13} In State v. Bobo,[6] undercover officers in a narcotics unit were in an unmarked police car during their investigation of an area of the city known for heavy drug activity. As the officers patrolled the area, they noticed a car with two occupants legally parked on the street. After the officers circled the block and returned to the parked car, only one person was visible within the car. Upon closer observation, the defendant was seen popping up in the passenger's side of the front seat of the car, looking at the officers and then bending down as if to hide something under the front seat.
{¶ 14} The Supreme Court of Ohio held that, under the totality of the circumstances, the investigative stop in the case was reasonable because (1) the area was noted for high drug activity; (2) the stop was made at 11:20 p.m.; (3) the officer was a veteran with hundreds of drug arrests; (4) the officer was familiar with the area and how drug transactions occurred there; and (5) he observed the defendant's furtive gesture.[7]
{¶ 15} "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry [v. Ohio] recognizes that it may be the essence of good police work to adopt an intermediate response. * * * A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."[8]
{¶ 16} In the present case, we hold that the totality of the circumstances provided the police with a reasonable, articulable suspicion to warrant an investigative stop of Roper.[9] The area was one where numerous arrests for drug trafficking and possession had been made. Officer Vogelpohl and his partner were responding to complaints of drug trafficking in the area. Officer Vogelpohl had been working in the city's Street Corner Unit for over a year, where he had received training in surveillance and detection of drug activity, and previously had been with the police force for three years. As the group on the sidewalk was flagging down passing cars, Roper stopped and one member of the group jumped into his car for a few minutes to engage in what appeared to be an exchange. Based upon his training and experience, Officer Vogelpohl was entitled to suspect that a drug transaction had occurred.
{¶ 17} Accordingly, we hold that the investigatory stop in this case was lawful because the police had a reasonable, articulable suspicion that Roper had engaged in criminal activity. We reverse the judgment of the trial court and remand this case for further proceedings consistent with law and this Decision.
Judgment reversed and cause remanded.
Painter, P.J., and Hildebrandt, J., concur.
[1] See Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868; State v.Williams (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108.
[2] Maumee v. Weisner, 87 Ohio St.3d 295, 299, 1999-Ohio-68,720 N.E.2d 507, citing Terry, supra, at 22, 88 S.Ct. 1868.
[3] Terry, supra, at 21-22, 88 S.Ct. 1868.
[4] State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, citing with approval State v. Freeman (1980),64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
[5] See Freeman, supra.
[6] See Bobo, supra.
[7] Id. at 179-180, 524 N.E.2d 489.
[8] Id. at 180, 524 N.E.2d 489, citing Adams v. Williams (1972),407 U.S. 143, 145-146, 92 S.Ct. 1921.
[9] See, also, State v. Crum (Mar. 18, 1993), 8th Dist. No. 61803 (investigative stop was reasonable where (1) high drug activity occurred in the area; (2) officer had made numerous drug arrests; (3) officers had received complaints of drug activity in the area; (4) police had set up surveillance of the area; (5) a car with several males was parked at the curb with the engine running; (5) a male leaned into the passenger window of the parked car; (6) activity was occurring within the car; and (7) as police approached the car, the defendant thrust his hand into his pants as if to hide, or search for, an object); State v. Kinds (Oct. 28, 1993), 8th Dist. No. 65243 (investigative stop was reasonable where (1) area was characterized by high drug sales; (2) the offense occurred at nighttime; (3) the police officer was experienced and knew how drug sales took place; and (4) the officer saw the defendant flagging down cars, and then shoving something into his mouth); State v. Streeter (July 2, 1992), 8th Dist. No. 62682 (investigative stop was reasonable where (1) the area had a reputation for criminal activity; (2) the stop was made at night; (3) the lead officer was a fifteen-year veteran with over a thousand drug arrests; (3) the officer saw the defendant make a gesture that, given the previous factors, may have indicated an attempt to exchange money for drugs).