OPINION
{¶ 1} Defendant-appellant Jill Marie Curtis appeals from her conviction and sentence on one count of Receiving Stolen Property and one count of Illegal Conveyance of Drugs of Abuse onto the Grounds of a Detention Facility, following a no-contest plea. Curtis contends that the trial court erred by denying her motion to suppress evidence upon the ground that it was obtained as a result of an unlawful detention. We conclude that there is evidence in the record to support the trial court's finding that the detention was based on reasonable, articulable suspicion, and was, therefore, lawful. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} The only witness at the suppression hearing was Dayton Police Officer John W. Eversole, a patrolman with six years experience on the Dayton police force. The trial court found Eversole to be a credible witness, and adopted, as the trial court's findings of fact, the facts set forth in the State's memorandum in opposition to Curtis's motion to suppress. Those facts are set forth, in the State's memorandum, as follows:
 {¶ 3} "On November 30, 2003, around 8:30 am, Officer John Eversole (`Eversole') was on routine patrol in the area of East Third and North Jersey Street. Eversole witnessed the Defendant on the porch of 12 North Jersey Street. That address had affixed to the house a no trespassing sign. That residence was located in a high crime area. More specifically, Eversole had numerous encounters at that location involving drugs. Eversole knew the house as a known drug location. In addition, the owner of the residence, Thomas Combs, had previously instructed Eversole to clear people out of the residence. Also, the police had received numerous citizen complaints about this specific residence. Eversole drove around the block. When he returned, the Defendant was still on the front porch by herself.
 {¶ 4} "Eversole approached the Defendant on the porch. During the voluntary encounter, he inquired of her as to what she was doing at the residence. Throughout the conversation, it became apparent to Eversole that the Defendant was not sure who lived at the location nor did she know the full name of who she claimed she was there to see. Eversole made several observations of the Defendant. The Defendant had brown fingertips and had keys in her hand. The brown fingertips gave Eversole the suspicion that the Defendant was a drug user. Eversole inquired as to ownership of the vehicle and the Defendant gave several stories as to who was the owner of the vehicle. Eversole also asked the Defendant her name and the Defendant gave the false name of Jill Chambers. [There is no indication in the record that Eversole became aware, until after the detention commenced, that he had been given a false name.]
 {¶ 5} "At this point of the encounter, the Defendant decided to leave. Eversole indicated to the Defendant that he needed to speak with her further and she was not free to leave. Based on all of his observations, Eversole wanted to conduct an investigatory interview. The Defendant did not comply with Eversole and she walked towards the vehicle. In the process of Eversole trying to walk the Defendant to his cruiser, the Defendant became extremely uncooperative. The Defendant was yelling obscenities at Eversole. It was at that time, Eversole had to physically restrain the Defendant on the ground. Other officers responded to the scene and recognized the Defendant as Jill Curtis, not Jill Chambers. Prior to placing the Defendant into the cruiser, drugs were found on her during a pat down. In addition, several checks were found in the vehicle that did not belong to the Defendant."
 {¶ 6} Curtis was charged in two separate indictments with Possession of Crack Cocaine, in an amount less than one gram; Receiving Stolen Property; Possession of Cocaine; and Illegal Conveyance of Cocaine onto the Grounds of a Detention Facility. She filed a motion to suppress evidence, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing on the motion to suppress, the trial court overruled the motion.
 {¶ 7} Thereafter, pursuant to a plea bargain, Curtis pled no contest to one count of Receiving Stolen Property and one count of Illegal Conveyance of Drugs of Abuse onto the Grounds of a Detention Facility, and was sentenced accordingly. The other charges against her were dismissed.
 {¶ 8} From her conviction and sentence, Curtis appeals.
 II {¶ 9} Curtis's sole assignment of error is as follows:
 {¶ 10} "The trial court erred in allowing evidence seized in violation of the united states constitution and the ohio constitution which guarantee freedom from unreasonable searches and seizures."
 {¶ 11} Curtis argues that the trial court erred when it found that there was reasonable, articulable suspicion justifying her investigative detention.
 {¶ 12} Based upon our review of the transcript of the suppression hearing, we conclude that there is evidence in the record to support the trial court's adoption, as its findings of fact, of the facts set forth in the State's memorandum in opposition to Curtis's motion to suppress, quoted in full in Part I, above. Based upon those facts, the trial court rendered the following decision:
 {¶ 13} "Defendant argues that Officer Eversole lacked reasonable, articulable suspicion as required by Terry v. Ohio (1968), 392 U.S. 1, for an investigatory detention of Defendant, given the totality of the surrounding circumstances. Defendant argues that the Defendant's seizure was based solely on the grounds that the area was a `high crime/high drug-activity' area.
 {¶ 14} "The State argues that Officer Eversole had reasonable, articulable suspicion for an investigatory detention of Defendant based on drug activity and trespassing on the part of the Defendant.
 {¶ 15} "The Court is not persuaded by the State's argument that Officer Eversole had Terry suspicion that Defendant was violating the law as a trespasser. The Court, however, does find that Officer Eversole had Terry suspicion for an investigatory detention of Defendant for suspected drug activity, based on the following facts known by the officer, a six (6) year veteran patrol officer for Dayton; (1) the character of the neighborhood as a high crime/high drug-activity area; (2) the residence was a known `drug house,' based on citizen complaints and prior arrests, including the arrest of the resident and a `use nuisance' order that the residence was subject to; (3) a `no trespassing' sign posted on the residence; (4) the Defendant's brownish, discolored fingertips (known to the officer as being consistent with drug usage); (5) the Defendant's inability to give the last name of the person she intended to visit at the residence and lack of knowledge as to who resided at the residence; and (6) the Defendant's offering of three (3) persons who owned the Buick automobile she drove to the house (herself, then her boyfriend, and then her boyfriend's mother).
 {¶ 16} "Based on the foregoing, the Court finds that Officer Eversole had constitutional authority for an investigatory detention. The evidence was, however, that the Defendant did not submit to the detention but rather that she began to flail and attempt to get in the car she had driven. Officer Eversole then took Defendant to the ground and stayed on top of her, to immobilize her, until back-up arrived.
 {¶ 17} "The Defendant argues that she was effectively arrested, without probable cause, based on the restraint exerted by Officer Eversole. The Court finds this argument to be without merit. The Defendant's refusal to comply with the officer's investigatory detention escalated the need for further restraint, which the Court finds reasonable under the circumstances.
 {¶ 18} "The Court accordingly OVERRULES Defendant's motion to suppress based on Defendant's stop, seizure and detention."
 {¶ 19} Based upon our review of the transcript of the suppression hearing, we conclude that there is evidence in the record to support all of the factual findings referred to in, or implicit in, the trial court's decision. We note that Eversole testified that he has seen people in the past with the brown coloration on their fingertips that he noticed on Curtis's fingertips, "well over 100 times," and that, based upon his experience, this "could be indicative of abuse of crack cocaine."
 {¶ 20} We agree with the trial court that an investigatory detention did not commence until just following Eversole's second questioning of Curtis concerning the identity of the owner of the car. She had previously identified the car as hers, but, upon later being asked, again, who owned the car, she first said that her boyfriend owned the car, and then said that her boyfriend's mother owned the car. It was right after this that Curtis attempted to get in the car, with the evident purpose of leaving, and Eversole informed her that she was not free to leave. Until then, the encounter between Eversole and Curtis was consensual.
 {¶ 21} We also agree with the trial court that the nature of the detention as a brief, investigative detention, was not altered when Curtis attempted to ignore Eversole's statement that she was not free to leave. Eversole resorted to force only when it became clear that force was going to be required to effect the detention by preventing Curtis from leaving the scene.
 {¶ 22} Whether an officer has sufficient reasonable and articulable suspicion to justify an investigatory detention is based upon the totality of the circumstances. State v. Freeman (1980), 64 Ohio St.2d 291,295, 414 N.E.2d 1044, 18 O.O.3d 472. We agree with the trial court that, based upon the facts and circumstances known to Eversole at the time, Eversole had a reasonable and articulable suspicion justifying his investigative stop of Curtis. Curtis's sole assignment of error is overruled.
 III {¶ 23} Curtis's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Grady, JJ., concur.