DECISION
{¶ 1} Relator, Frank Akers, Jr., filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which denied him temporary total disability ("TTD") compensation on the basis that relator had abandoned his former position of employment, and to find that he is entitled to the compensation. In the alternative, relator asks that this court order the commission to find that he had returned to work in December 2002, thereby making him eligible to receive TTD compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed objections to the magistrate's decision, and the commission and Custom Works Auto Body, Inc., relator's employer ("employer"), responded to those objections. For the following reasons, we overrule relator's objections.
 {¶ 3} In brief, relator sustained a work-related injury in 2002, and his claim was allowed. After receiving TTD compensation for two brief periods, relator was released to light-duty work, which his employer made available to him in March 2002. Relator saw his treating physician, Dr. Brian Marshall, from March through May 6, 2002, and Dr. Daniel M. Dorfman, who examined relator on April 3, 2002.
 {¶ 4} On April 25, 2002, relator asked the employer if he could be laid off so that he could receive unemployment compensation. The employer did lay off relator, and relator began receiving unemployment compensation on May 1, 2002. Dr. Marshall's May 6, 2002 progress report notes that relator was on "voluntary layoff."
 {¶ 5} In June 2002, relator filed motions requesting TTD compensation from May 6 through November 11, 2002. A district hearing officer ("DHO") heard relator's motions and denied them, finding that relator had voluntarily removed himself from his light-duty position. On appeal, a staff hearing officer ("SHO") affirmed the DHO's denial of TTD compensation.
 {¶ 6} On August 1, 2003, relator filed a motion requesting that his claim be allowed for an additional condition, and he further requested TTD compensation. A DHO heard relator's motion. The DHO's order allowed the additional claim, but denied TTD compensation because relator had voluntarily abandoned his employment. Although relator presented evidence that he had gone back to work for three days in December 2002, the DHO rejected that evidence. On appeal, an SHO affirmed the DHO's order. The commission denied any further appeals, and this mandamus action followed.
 {¶ 7} The magistrate found that the commission had not abused its discretion in finding that relator had voluntarily removed himself from the light-duty position. The magistrate also found that the commission had not abused its discretion in rejecting relator's evidence concerning his alleged attempted return to the workforce in December 2002.
 {¶ 8} In his first objection, relator argues that the magistrate's decision contains several erroneous assertions in the findings of fact. While not necessarily agreeing that the magistrate's findings contain errors, the employer responds that any such errors are immaterial to the magistrate's analysis and ultimate conclusions. We agree.
 {¶ 9} First, relator takes issue with the magistrate's statement, in Findings of Fact No. 11, that the DHO noted that the treating physician's notes "did not substantiate" that relator reported difficulty doing light-duty work. Instead, relator argues, the DHO concluded that these notes "do substantiate" that relator reported difficulty doing light-duty work. Upon review of the DHO's order, we conclude that the DHO's review of the treating physician's records indicates that, between March 28, 2002, and April 17, 2002, relator complained frequently about his light-duty work. However, in rejecting relator's claim that he quit working because his restrictions were not followed, the DHO also stated: "On 05/06/2002, no complaints are documented. Instead, the physician of record indicates `He is on voluntary layoff at this point . . .' This office note in no way indicates that the claimant was not able to perform his light duty position." To clarify the DHO's findings, we change the third sentence of Findings of Fact No. 11 of the magistrate's decision (beginning with the word "Further") to the following:
Upon review of relator's treating physician's office notes, the DHO noted that, while relator complained frequently about his light-duty work between March 28, 2002, and April 17, 2002, the treating physician's May 6, 2002 report indicated no such complaint and did not indicate that relator was unable to perform the light-duty work.
 {¶ 10} To the extent the magistrate's statement was different, we do not find that the difference was material or that it had an impact on the magistrate's analysis or recommendation.
 {¶ 11} Second, relator takes issue with the magistrate's statements concerning whether relator appealed the SHO's October 28, 2002 order. In Findings of Fact No. 13, the magistrate states that relator "did not appeal" the order until August 2005. In her conclusions of law, the magistrate states that "relator failed to challenge the 2002 commission orders finding that he had voluntarily abandoned his employment by requesting the layoff and denying him TTD compensation beginning May 2002." Upon review, we delete the latter sentence, at ¶ 46 of the magistrate's decision, from the conclusions of law. This deletion has no material impact on the remainder of the decision.
 {¶ 12} Third, relator takes issue with the following statement in Findings of Fact No. 18: "As stated previously, relator appealed from the original commission orders denying him TTD compensation on the basis that he had voluntarily abandoned his employment when he requested and was given the voluntary layoff in August 2005, and that appeal was refused." In his objections, relator asserts that the magistrate misstated the date of the layoff, which occurred in April 2002. We find, however, that Findings of Fact No. 18 notes, again, the date of relator's appeal from the SHO's October 2002 order; it does not refer to the date of the layoff. Nevertheless, to clarify, we change Findings of Fact No. 18 to the following:
As stated previously, in August 2005, relator appealed from the original commission orders denying him TTD compensation on the basis that he had voluntarily abandoned his employment when he requested and was given the voluntary layoff, and that appeal was refused.
 {¶ 13} This change has no material impact on the remainder of the decision.
 {¶ 14} In conclusion, having considered relator's objection concerning alleged misstatements in the magistrate's decision, having made the above-noted changes to the decision, and having concluded that these changes have no material impact on the remainder of the decision, we overrule relator's first objection. In addition, with these changes, we adopt the magistrate's findings of fact as our own.
 {¶ 15} In his second objection, relator argues that the magistrate unreasonably concluded that relator voluntarily abandoned his former position. However, we agree with the magistrate's careful analysis of this issue, as well as the magistrate's conclusion that relator removed himself from his light-duty position voluntarily when he requested the layoff. Further, we decline, as we must, relator's request that we re-evaluate the evidence and determine relator's motivation for requesting the layoff. Therefore, we overrule relator's second objection.
 {¶ 16} In his third objection, relator argues that, assuming arguendo that relator did abandon his former employment, his re-entry into the workplace renewed his eligibility to receive TTD compensation. However, we agree with the magistrate's analysis and conclusion in that regard. The commission considered and expressly rejected relator's evidence to support the alleged re-entry. Therefore, the magistrate correctly upheld the commission's conclusion that relator remained ineligible for TTD compensation, and we overrule relator's third objection.
 {¶ 17} In conclusion, we overrule relator's first, second, and third objections to the magistrate's decision. Having conducted an independent review of the record in this case, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, except as we noted above. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
Sadler and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio on relation of : Frank Akers, Jr., Relator, : v. No. 05AP-1329 :
Custom Works Auto Body, Inc., (REGULAR CALENDAR) and : Industrial Commission of Ohio, Respondents. :
 MAGISTRATE'S DECISION Rendered on July 24, 2006 Wincek, DeRosa Bucalo Co., L.P.A., John C. Bucalo, andChristopher G. Wincek, for relator.
Critchfield, Critchfield Johnston, Ltd., Susan E. Baker,
and Elizabeth Krieder Wright, for respondent Custom Works Auto Body, Inc.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 18} Relator, Frank Akers, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied him temporary total disability ("TTD") compensation on the basis that relator had abandoned his former position of employment and find that he is entitled to that compensation. In the alternative, relator requests that the commission be ordered to find that he had returned to work in December 2002, thereby making him once again eligible to receive TTD compensation.
Findings of Fact:
 {¶ 19} 1. Relator sustained a work-related injury on February 26, 2002, and his claim was originally allowed for "sprain lumbar region."
 {¶ 20} 2. Two periods of TTD compensation were paid to relator following his injury. Relator was awarded TTD compensation from February 27 through March 4, 2002, and from March 7 through March 24, 2002.
 {¶ 21} 3. Relator was released to light-duty work and his employer made a light-duty position available to him beginning March 25, 2002.
 {¶ 22} 4. Relator continued to see his treating physician, Dr. Brian Marshall, on a regular basis. In his progress reports from March 25 through May 6, 2002, Dr. Marshall noted that relator continued to have pain in his back. Dr. Marshall recommended a physical therapy program, provided relator with pain medicine, explained to relator the benefits of continuing to work relative to the healing of his back, and continued to indicate that relator could work in a light-duty position.
 {¶ 23} 5. Relator was referred to Dr. Daniel M. Dorfman, who examined him on April 3, 2002. Dr. Dorfman noted that x-rays taken on March 8, 2002, appeared to show "a grade I spondylolisthesis of L5 on S1 with slight hyperlordosis in the lumbar region." Thereafter, an MRI was obtained which, Dr. Dorfman noted, "showed slight thinning of the pars interarticularis at the L5 level but no spondylolysis appreciated. No disc herniation was noted." Dr. Dorfman explained that the question to be resolved was whether relator's problems were acute versus chronic and referred him for a bone scan. Dr. Dorfman indicated that, if the bone scan was positive and showed acute spondylolisthesis, relator should be taken off work activity and limited to sedentary levels for a six-week time frame to permit his back to heal. However, if spondylolisthesis was not demonstrated on the bone scan, then Dr. Dorfman recommended a series of trigger-point injections with additional therapy while following his restricted-duty activity.
 {¶ 24} 6. The bone scan came back normal.
 {¶ 25} 7. On April 25, 2002, relator asked his employer if he could be layed off so that he could go on unemployment compensation and give his body time to heal.
 {¶ 26} 8. Relator began receiving unemployment compensation as of May 1, 2002.
 {¶ 27} 9. In Dr. Marshall's progress report dated May 6, 2002, he indicated that relator was on "voluntary layoff."
 {¶ 28} 10. In June 2002, relator filed motions requesting TTD compensation from May 6 through November 11, 2002.
 {¶ 29} 11. Relator's motions were heard before a district hearing officer ("DHO") on September 11, 2002, and were denied. The DHO determined that relator had voluntarily removed himself from his light-duty position and requested a voluntary layoff. [Upon review of relator's treating physician's office notes, the DHO noted that, while relator complained frequently about his light-duty work between March 28, 2002, and April 17, 2002, the treating physician's May 6, 2002 report indicated no such complaint and did not indicate that relator was unable to perform the light-duty work.] Instead, the DHO noted that relator's treating physician continued him on light-duty work and that Dr. Dorfman also indicated that relator's restricted-duty work should be continued. Although relator testified, the DHO determined that his allegations that the work his employer had made available to him was, in reality, outside of his restrictions and that was why he left work was not persuasive. Mr. Kuhns testified on behalf of the employer that relator had been upset about having to do light-duty work, that he complained about some duties, and was given other work to perform. Mr. Kuhns also testified that relator had requested the layoff and that the employer agreed not to contest his application for unemployment compensation.
 {¶ 30} 12. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on October 28, 2002. The SHO affirmed the DHO's order in all respects.
 {¶ 31} 13. Relator did not appeal from the SHO's order finding that he voluntarily abandoned his employment and was not eligible for TTD compensation until August 2005. At that time, it was denied.
 {¶ 32} 14. On August 1, 2003, relator filed a motion requesting that his claim be additionally allowed for an additional condition and relator further requested TTD compensation.
 {¶ 33} 15. Relator's motion was heard before a DHO on October 27, 2003, and resulted in an order additionally allowing relator's claim for "aggravation of pre-existing degenerative disc disease at L4-5[."] With regard to his request for TTD compensation, the DHO determined that TTD compensation was not payable to relator and explained as follows:
The Hearing Officer finds that on 09/11/2002, the claimant was found to have voluntarily abandoned his employment with the instant employer when he requested a voluntary lay-off.
The claimant has presented documentation in file from allegedly a new employer, indicating that he had gone back to work for three days in December of 2002.
The Hearing Officer finds that said documentation is not probative to indicate that he returned to work with another employer which would make him now eligible for the payment of temporary total compensation.
The Hearing Officer finds that the claimant indicated he was paid cash, therefore, there is no record other than this document from his allegedly new employer indicating that he had worked.
 {¶ 34} 16. Relator appealed and the matter was heard before an SHO on January 21, 2004. The SHO affirmed the prior DHO order allowing relator's claim for the additional condition but denying TTD compensation for the following reasons:
The testimony of Mr. Patterson that the injured worker attempted to work for him three days in December of 2002 was noted; however, this Staff Hearing Officer finds that said work attempt by the injured worker was not a good faith attempt to return to work since the injured worker was not able to complete the work unsigned by Mr. Patterson, and was not within restrictions listed by the physician of record. In fact, the physician of record indicated the injured worker was unable to work; therefore, any unsuccessful attempt to perform work as merely an attempt to circumvent the prior finding of ineligibility due to the voluntary abandonment. Per Mr. Patterson's signed statement all activity performed was with back pain. Hence, this Staff Hearing Officer finds the attempted "work" in December of 2002 was not sufficient to qualify the injured worker for temporary total compensation.
 {¶ 35} 17. Relator's further appeal was refused by order of the commission mailed February 14, 2004.
 {¶ 36} 18. [As stated previously, in August 2005, relator appealed from the original commission orders denying him TTD compensation on the basis that he had voluntarily abandoned his employment when he requested and was given the voluntary layoff, and that appeal was refused.]
 {¶ 37} 19. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 38} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 39} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 40} In the present case, relator received a period of TTD compensation following the date of his injury. Thereafter, his treating physician released him to light-duty work and, as of March 25, 2002, relator's employer made light-duty work available to him. As such, pursuant to R.C. 4123.56 and Ramirez,
relator's TTD compensation was terminated.
 {¶ 41} It is undisputed that the voluntary abandonment of employment can bar the future payment of TTD compensation. SeeState ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44; State ex rel. Jones Laughlin Steel Corp. v.Indus. Comm. (1985), 29 Ohio App.3d 145; State ex rel. Burleyv. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. The rationale for this principle is that TTD compensation is only payable where it is the industrial injury which precludes the injured worker from being able to continue working. When the injured worker leaves employment, for reasons unrelated to the industrial injury, the causal connection between the injured worker's inability to work and his injury is broken and TTD compensation is not payable.
 {¶ 42} In the present case, the issue was whether or not relator had broken the causal relationship between his industrial injury and his lack of wages. The burden is on the claimant, relator herein, to present evidence establishing entitlement to TTD compensation.
 {¶ 43} In the present case, relator asserts that "layoffs" are employer initiated and do not constitute grounds for denying the payment of TTD compensation. Relator argues that, if employers are permitted to lay off employees and thereby avoid paying TTD compensation, then employers have a powerful weapon and injured workers will be prejudiced. Relator cites State exrel. Diversitech Gen. Plastic Film Div. v. Indus. Comm. (1989),45 Ohio St.3d 381, in support. For the reasons that follow, this magistrate finds that relator's argument is not well-taken and lacks merit.
 {¶ 44} In the Diversitech case, the claimant sustained a serious injury to his left arm. Following rehabilitation, the claimant and the employer entered into an agreement under which the claimant would be provided with light-duty employment in exchange for partial reimbursement of his wages by the rehabilitation division. Following the expiration of the agreement period, the claimant had not been medically released to return to his former position of employment and he continued in the light-duty job until he was laid off for economic reasons in July 1985.
 {¶ 45} The claimant sought and was granted TTD compensation and the employer filed a mandamus action. This court found that the claimant had not abandoned his employment and denied the employer's request for a writ of mandamus. On appeal, the Supreme Court of Ohio stated as follows:
Abandonment or layoff can preclude payment of temporary total compensation. * * * The question of abandonment is "primarily * * * [one] of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts. * * * All relevant circumstances existing at the time of the alleged abandonment should be considered." State ex rel. Freeman (1980),64 Ohio St.2d 291, 297 * * *. Similarly, West Park Shopping Center v.Masheter (1966), 6 Ohio St.2d 142, 144, * * * held that "`[a]n abandonment is proved by evidence of intention to abandon as well as of acts by which the intention is put into effect.'" The presence of such intent, being a factual question, is a determination for the commission. * * *
Id. at 383.
 {¶ 46} In the present case, the commission determined that relator's layoff was initiated by him, not by the employer, and that it was not due to his injury because his treating physician continued to certify him as being capable of performing light-duty work and his employer was making that work available to him. It was not an abuse of discretion for the commission to determine that relator's testimony was unpersuasive. [Text deleted.] Relator cites a later passage from the Diversitech
case wherein the court noted that the claimant's layoff did not bar his eligibility for TTD compensation. However, there is a significant difference between the Diversitech case and the present case. In the Diversitech case, the claimant was laid off by the employer for economic reasons. As such, the layoff was clearly employer-initiated. In the present case, relator himself requested the layoff. The layoff was not initiated by the employer. As such, the magistrate finds that the commission did not abuse its discretion in finding that relator had voluntarily removed himself from the light-duty position which the employer made available to him, thereby breaking the causal connection between his industrial injury and his inability to work.
 {¶ 47} Relator also contends that the commission should have found persuasive his evidence that he attempted to return to work in December 2002. As such, relator contends that he should be entitled to TTD compensation beginning in December 2002.
 {¶ 48} In the present case, relator presented evidence that he attempted to work for another auto body shop in December 2002, but that he was not able to continue the work due to his industrial injury. The commission examined the evidence presented by relator, considered his testimony, and considered the testimony of the man who provided him with work, and determined that the evidence was not persuasive. Specifically, the commission found that the work relator was attempting to do in December was not within the restrictions set forth by his treating physician and that it did not constitute a good-faith effort to return to the workforce. Instead, the commission determined that relator was merely attempting to circumvent the prior finding of ineligibility for TTD compensation due to his voluntary abandonment. Based upon a review of the evidence, the magistrate finds that the commission did not abuse its discretion in this regard.
 {¶ 49} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his request for TTD compensation based upon a finding that he had voluntarily abandoned his employment with the employer and that he did not make a good-faith effort to return to employment in December, thereby denying his request for TTD compensation. As such, this court should deny relator's request for a writ of mandamus.