OPINION
{¶ 1} Anton L. Armstrong appeals from his conviction and sentence following a no-contest plea to one count of possessing crack cocaine. *Page 2 
 {¶ 2} In his sole assignment of error, Armstrong contends the trial court erred in overruling a motion to suppress the crack cocaine. He asserts that police found the cocaine in his pocket after unlawfully detaining him.
 {¶ 3} Suppression-hearing testimony reveals that Dayton police sergeant Mark Spiers and parole officer Shawn Humphrey approached an apartment at 2030 Wayne Avenue to investigate reported drug activity involving a parolee. Although the officers did not find the parolee there, they spoke to a resident of the apartment, Marilyn Minkia. During their conversation with Minkia, they observed signs of drug activity and she admitted being a drug user. She also told the officers that she recently had ordered crack cocaine from a person named Wayne. She described Wayne as a black male in his early thirties with a medium build. Minkia also told the officers that she expected Wayne to deliver the drugs at any time. Spiers and Humphrey then asked Minkia to call Wayne to verify that he was en route. Minkia agreed. With the officers listening, she made a telephone call and asked for "a forty hard," which is the street name for a piece of crack cocaine. The dealer said he would arrive in about thirty minutes. While waiting inside the apartment with Minkia, Spiers and Humphrey radioed the information they had received to Detectives Joey Myers and William Knight, who established surveillance outside. Spiers and Humphrey also advised the surveillance crew that Wayne was expected to arrive in a black truck and that the drug transaction would take place at the back door of the apartment.
 {¶ 4} Approximately thirty to forty minutes later, a black male arrived in a gray car. He approached the apartment and ascended a flight of stairs to the back door. *Page 3 
Minkia opened the door and engaged in a conversation with the man. None of the officers involved could hear the substance of the conversation or see whether a drug transaction occurred. After a short time, the man descended the stairs as Minkia closed the door. Before Spiers and Humphrey could ask Minkia whether he was Wayne, Detectives Myers and Knight approached him at the foot of the stairs. They identified themselves as police officers and asked to talk to the man. They also asked him to keep his hands visible. In response, the man began to back up and started to place his right hand inside his right pants pocket. Fearing that he might be reaching for a weapon, Myers and Knight grabbed the man's wrists and, after some resistance, took him to the ground and handcuffed him. Knight then conducted a pat-down during which he felt and observed a bulge "poking out" of the man's right pants pocket. Based on his training and experience, Knight was certain that the bulge was a bag of crack cocaine. After finishing the pat-down, Knight removed the object, which turned out to be a baggie containing several rocks of crack cocaine. The detectives subsequently learned that the person they had encountered was appellant Armstrong, not Wayne, and that no drug transaction had occurred.
 {¶ 5} Based on the foregoing facts, the trial court held that Detectives Myers and Knight had reasonable and articulable suspicion of criminal activity sufficient to justify detaining Armstrong. The trial court also concluded that Armstrong's act of reaching for his pocket while backing away justified a pat-down for weapons. Finally, the trial court determined that Knight's removal of the crack cocaine from Armstrong's pocket was permissible because its identity was immediately apparent and there was no invasion of *Page 4 
Armstrong's privacy beyond what already was authorized by the weapons frisk.
 {¶ 6} On appeal, Armstrong challenges only the trial court's finding that Detectives Myers and Knight had reasonable and articulable suspicion to detain him at the foot of the stairs.[1] In support, Armstrong notes that he arrived in a gray car whereas Wayne was expected to arrive in a black truck. Armstrong also stresses that the officers could not hear his conversation with Minkia at the apartment door and that none of them were in a position to see a drug transaction (which, in any event, did not occur). Armstrong additionally points out that the incident occurred in daylight and that there was no testimony about the area being a high-crime location. According to Armstrong, these facts distinguish the present case from State v. Wood, Montgomery App. No. 19385, 2003-Ohio-3759, one of the cases cited by the trial court. Finally, Armstrong argues that Minkia was an informant with whom police had no prior experience and that her information bore no indicia of reliability.
 {¶ 7} Upon review, we find Armstrong's argument to be unpersuasive. When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v. Retherford
(1994), 93 Ohio App.3d 586. We must accept the trial court's findings of fact *Page 5 
if they are supported by competent evidence in the record. Id. Accepting those facts as true, we independently must determine, as a matter of law and without deference to the trial court's legal conclusion, whether the trial court erred in applying the substantive law to the facts. Id.
 {¶ 8} In the present case, the State presented the only witnesses at the suppression hearing, and we have set forth the undisputed facts above. The issue before us is whether the trial court erred in finding, based on those facts, that Detectives Myers and Knight acted lawfully by detaining Armstrong at the bottom of the stairs.
 {¶ 9} Once a police officer has restrained a person's liberty by either physical force or a show of authority the guarantees of the Fourth Amendment are implicated. United States v. Mendenhall (1979),446 U.S. 544, 552. Here Myers and Knight identified themselves as police officers and impeded Armstrong's progress as he walked down the stairs. Therefore, the trial court did not err in finding that Armstrong was detained for Fourth Amendment purposes. The crucial issue is whether the investigatory detention was lawful. "A law enforcement officer may make a brief investigatory stop if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968),392 U.S. 1, 21. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 10} The circumstances here persuaded us that Detectives Myers and Knight had reasonable and articulable suspicion that Armstrong had been involved in a drug *Page 6 
transaction at 2030 Wayne Avenue. As set forth above, Minkia initially advised Spiers and Humphrey that she was anticipating a delivery of crack cocaine from a black male named Wayne. Minkia also told the officers that she expected the drugs to arrive within thirty minutes. With the officers listening, she made a phone call and confirmed that Wayne was bringing the crack cocaine. Spiers and Humphrey relayed their information to Detectives Myers and Knight, who were waiting outside. Armstrong, a black male, arrived a short time later and approached the back door of Minkia's apartment, precisely where the transaction was to occur. Although the officers could not see or hear what transpired, Armstrong conversed with Minkia briefly and then attempted to leave. These facts reasonably warranted Myers and Knight in making a brief investigatory detention despite the fact that Armstrong arrived in a gray car rather than a black truck.
 {¶ 11} In reaching this conclusion, we reject Armstrong's claim that Minkia's information bore no indicia of reliability. Although police had not worked with her previously, she was not anonymous as her identity and place of residence were known to them. Moreover, Sergeant Spiers saw evidence of drug use in her apartment and personally heard her confirm the delivery of "a forty hard." The subsequent observations of Armstrong by Detectives Myers and Knight corroborated Minkia's claim that a black male would be arriving at the back door of her apartment within approximately thirty minutes. Although the officers ultimately discovered that Armstrong was not Wayne and that no drug transaction had occurred, these facts do not negate the existence of reasonable and articulable suspicion at the time of the detention.
 {¶ 12} We note too that the trial court properly overruled the suppression motion *Page 7 
despite Armstrong's claim that certain facts in this case are distinguishable from the facts of State v. Wood, supra. As we recently recognized in State v. McGraw, Montgomery App. No. 21610,2006-Ohio-6228, ]}17, "[s]earch and seizure issues are notoriously fact-sensitive." Based on the facts of this case, the trial court properly found that Detectives Myers and Knight had reasonable and articulable suspicion to detain Armstrong.
 {¶ 13} Finally, although Armstrong has not specifically addressed the issues, we note our agreement with the trial court that Knight acted lawfully in conducting a pat-down for weapons and in removing the baggie of crack cocaine from Armstrong's pants pocket. The weapons frisk was permissible because the officers reasonably believed that Armstrong, whom they suspected of selling drugs, might be armed and dangerous, particularly when he began reaching for his pocket after being advised to keep his hands in view. Additionally, Knight's immediate "plain-feel" recognition of the object in Armstrong's pants pocket as crack cocaine justified its removal. Minnesota v. Dickerson (1993), 508 U.S. 366.
 {¶ 14} Based on the reasoning set forth above, we overrule Armstrong's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
WOLFF, P.J., and FAIN, J., concur.
[1] Although Armstrong's assignment of error also refers to a lack of probable cause, we note that the trial court based its ruling on the existence of reasonable and articulable suspicion, not probable cause. Moreover, Armstrong's written argument itself addresses only whether the trial court erred in finding reasonable and articulable suspicion. *Page 1